Filed 12/2/14  Koshman v. Koshman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| LARRY KOSHMAN, | C074975 |
| Plaintiff and Appellant, | (Super. Ct. No. SPR0000138) |
| v. | |
| ROBERT KOSHMAN, Individually and as Trustee, etc., | |
| Defendant and Respondent. | |

Plaintiff Larry Koshman (Larry) appeals from a judgment following:  (1) the denial of his motion for leave to file an amended petition for relief from breach of trust; and (2) a grant of summary judgment in favor of his brother, defendant Robert Koshman (Robert), individually and as trustee of the family trust.  The trial court found that Larry: (1) unreasonably delayed in proposing the amendments to the petition; and (2) missed the three-year statute of limitations in which to file his petition for relief from breach of trust. We agree with the trial court and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Robert is the trustee of his parents' trust set up in 1980 for the benefit of the parents' children and their heirs. Larry is also one of those children. The trust provides that " 'a trustee shall be responsible only for such trustee's own acts and omissions in bad faith.' "

Included in the trust's assets is farmland in Placer County that the Koshman family has owned and farmed for over 70 years. In the 1950's, the Koshman family leveled some of that farmland (including fields now known as 7, 7a, and 8a) to grow rice, conserve water, and prevent pesticide runoff. In the early 1990's, Robert releveled those rice fields. The United States Department of Agriculture (Department), Farm Service Agency, contacted Robert about the releveling, claiming it was a conversion of wetlands into farmland that had "consequences under [federal law]." Robert's position was that leveling farmed wetlands like rice fields would have implications under federal law only if the leveling made production of rice possible where it previously had not been possible. Robert believed that was not the case here, because the fields had been leveled in the past and had long been used to grow rice. In any event, at the time the Farm Service Agency initially contacted Robert, it did not cut off farm benefit payments or take enforcement action against the trust.

In 2002 and 2003, Robert laser leveled fields 7, 7a, and 8a to conserve water and to protect the trust from liability due to pesticide runoff.

On January 16, 2004, the Farm Service Agency sent the trust a letter care of Robert stating that fields 7, 7a, and 8a were now considered "converted wetlands," a label which would "remain in effect until mitigation and will affect your eligibility for [Department] benefits." The letter also stated Robert could appeal this decision through the administrative appeals process with the Department.

On April 19, 2004, the Farm Service Agency notified Robert that the trust owed $178,368 plus interest.

2

Robert filed an administrative appeal of the Farm Service Agency's wetlands conversion determination. On June 24, 2004, a hearing officer from the Department's national appeals division determined that the Farm Service Agency's wetlands conversion decision was wrong. However, on August 25, 2004, the director of the Department's national appeals division reversed the hearing officer's determination and concluded there indeed was a wetlands conversion. Robert requested reconsideration, but that reconsideration was denied on November 30, 2004.

In a December 27, 2004, facsimile, Larry wrote to Robert that because of "new found discoveries we may be petitioning the court for a new Trustee and damages relating to the Trust and it[]s members."

A month later, in January 28, 2005, Larry's attorney followed up with a letter to Robert's attorney discussing Robert's laser leveling "misconduct" that resulted in "the government's imposition of the sanctions and termination of all rights to farming subsidies, along with an order for reimbursement of one year's subsidy, making the continued operation of the farm not economically feasible."

On February 3, 2005, Larry sent Robert a letter stating Larry could no longer stand by and allow Robert to oversee the trust, which was partly due to Robert's laser leveling the fields, which "caused the [trust] to be disqualified from any Government support now or in the future," and which resulted in the estate "now ow[ing] $68,000 back to the Government."

On February 15, 2005, the trust (via Robert) and Angelo K. Tsakopoulos Investments (Tsakopoulos) entered into an agreement to sell some of the trust property, including fields 7, 7a, and 8a, to Tsakopoulos. The agreement stated that, as to the "[w]etlands [i]ssue," Tsakopoulos will pay $10,000 to the trust "for legal fees on the wetlands issue. All prior cost incurred to date is the expense of the [trust]. After escrow closes, [Tsakopoulos] will be responsible for the resolution of the wetlands claim. [Tsakopoulos] shall indemnify, defend and hold [the trust], Robert Koshman, Trustee,

3

and Robert Koshman, personally, and the tenants of the [trust] harmless from any and all damages claims, liabilities, expenses (including reasonable attorneys' fees) arising out of or as a result of the wetland nuisance claims . . . including reimbursement of any government subsidies that [the trust] and [the trust's] tenants may be required to pay in connection with the resolution of the claim."

In a petition dated March 14, 2005, Larry petitioned to remove Robert as trustee. The petition alleged "on information and belief" that "[a]s a result of the manipulation of the 24 acres of wetlands, NONE of the property owned by the [trust] is eligible for government farming subsidies. Said ineligibility begins from the date of the violation in the years 2002 and 2003, and continues until the wetlands are restored or the damage is mitigated by substituting like property for converted wetlands . . . . [A]ny beneficiary who may want to farm property held by his or her subtrust will not be able to receive government farming subsidies . . . . [T]he Farm Service Agency, the agency that administers government benefits and loans, is in the process of sending letters to the family members who have received subsidies to inform them that they must reimburse the government for the subsidies received since the violation. [Larry] alleges on information and belief that all told, reimbursement will total approximately $170,000 per year of violation. The harm to family members opens the trust to liability."

On May 2, 2005, the trial court approved the agreement to sell the trust property to Tsakopoulos, and Larry consented to the sale.

On June 8, 2005, the Farm Service Agency notified Robert, Larry, and the other trust beneficiaries by letter that the debt of $178,368 plus interest was past due. The Farm Service Agency further notified them "[i]f you recently sold the property, and did not restore the converted wetlands before it was sold, all persons involved in the violation will remain permanently ineligible for any [Department] benefits."

Almost three years later, on June 5, 2008, Larry filed the instant petition for relief from breach of trust. Larry alleged that Robert "violated his duty . . . to exercise

4

reasonable skill, care and diligence in the administration of the trust by . . . the following misconduct" that Larry then detailed. One, in "2002 and 2003," Robert "caused Fields 7 and 8A . . . to be laser leveled." Two, "on August 6, 2004, [Robert] successfully petitioned the court to sell approximately 1400 acres of the Placer County properties, including the farmland subject to the wetlands violation. In May of 2005, Trustee sold the properties to developer Angelo Tsakopoulos for . . . $10,000.00/acre without providing for the restoration or mitigation of the wetland." And three, Robert "never . . . paid" a reimbursement to the Department for $69,606 "that the Trust received in federal farm subsidies for the 2002-2005 crop years," which it was required to pay "as a result of the wetland violation."[1] As to this last act, Larry alleged that the Farm Service Agency notified Robert, Larry, and other beneficiaries of the money that was due in a letter dated June 8, 2005, and also notified them "if the land has been sold without restoring the wetland, all beneficiaries of the Trust would be permanently ineligible for federal farm programs."

Because of Robert's breach of trust, "the Trust property and [Larry], as beneficiary . . . [were] harmed in the following ways:" (a) Larry, "either as an individual or under his own sub-trust" could not participate in farm subsidy programs for 2006 and 2007; (b) Larry was still obligated to pay his share of the subsidy money he received in 2002 through 2005, which was $13,921.20, and all other beneficiaries were still obligated to reimburse the Department when Robert "should have compelled payment of these monies

---

[1] Larry on appeal claims this third alleged breach is actually something else. He claims the third breach he alleged was Robert's "failure to enforce the purchase and sale agreement to compel . . . Tsakopoulos, to mitigate or otherwise restore the wetlands, which continued the individual beneficiaries (including [Larry]) ineligibility for [Department] benefits." This alleged breach appears nowhere in Larry's petition. The only claim related to selling the property to Tsakopoulos was the second claim: "Trustee sold the properties to developer Angelo Tsakopoulos for . . . $10,000.00/acre without providing for the restoration or mitigation of the wetland."

by Mr. Tsakopoulos pursuant to the terms of the indemnity agreement"; (c) the farmland distributed out of the trust to him has permanently lost value because Larry cannot enroll that land in federal farm programs; (d) Larry "has missed economic opportunities as a farmer" because he "has been forced to turn down an agricultural lease that was offered him this year because, without the subsidy payment, the risk of farming outweighs the potential profit"; and (e) Larry "will continue to be ineligible for farm subsidy payments under the recently passed federal farm bill."

On July 29, 2008, Robert filed his response to Larry's petition for relief from breach of trust. Robert alleged that Tsakopoulos had complied with the indemnity agreement, and that in the event that Tsakopoulos had not, Robert "will pursue appropriate action to enforce the agreement." Robert further alleged that under the terms of the trust, he, as trustee, was responsible only for his acts and omissions " 'in bad faith.' " Robert in good faith believed his actions did not violate any statutes related to farmed wetlands.

On October 23, 2009, Robert filed a cross-petition for indemnity against Tsakopoulos.

On November 25, 2009, Robert filed a complaint in federal district court to set aside the Department's wetland conversion determination.

By February 2012, discovery in the instant petition for relief from breach of trust was completed.

On March 31, 2012, the federal district court ruled that the Department's wetland conversion determination "conflicts with the plain statutory definition of a converted wetland . . . and is therefore 'not in accordance with the law.' " It granted summary judgment in favor of Robert, setting aside the Department's wetlands conversion determination.

On July 3, 2012, the trial court stayed the instant petition for relief from breach of trust "until appellate review of the District Court's judgment is completed and the District

6

Court's judgment is final or until this Court holds the Status Conference [on September 24, 2013] and decides to terminate or otherwise adjust the stay, whichever comes first."

The Department initially appealed the decision but then moved to voluntarily dismiss the appeal, which the Ninth Circuit Court of Appeals granted on September 19, 2012. The dismissal of the Department's appeal in the federal case also ended the stay of litigation (that began in July 2012) in Larry's instant petition for relief from breach of trust.

On January 15, 2013, the trial court set September 9, 2013, as the date for trial on Larry's instant petition for relief from breach of trust.

On March 20, 2013, Robert moved for summary judgment on Larry's petition on two grounds: (1) Larry's claims were barred by the three-year statute of limitations because Larry discovered the subject of the claims by 2004; and (2) Larry had never alleged bad faith on Robert's part, and bad faith was essential under the terms of the trust.

On April 15, 2013, Larry responded by filing a motion for leave to file an amended petition. The amended petition pled Robert's "bad faith" in laser leveling the fields. It also added two new allegations of breach of trust. The first new allegation of breach of trust was Robert "knowingly and intentionally fail[ed] to implement [a 1996 wetlands plan and agreement] which subject[ed] the Trust to continued liability exposure." The second new allegation of breach of trust was Robert "incurr[ed] substantial fees and costs to the Trust to appeal the [Department] decision in an effort primarily to compensate for his own grossly negligent, reckless, acts in bad faith and to help defend his personal liability as a result."

Robert's summary judgment motion and Larry's motion to amend were scheduled to be heard on July 11, 2013, which was eight weeks before trial.**2**

The court denied Larry's motion for leave to amend. The court explained that "discovery between the parties ceased more than a year ago and that [the] additional information [Larry] wish[ed] to rely on must have been known to him at that time." The allegations of willful misconduct and gross negligence could have been brought in the nearly five years since the defenses were raised by Robert. And finally, the new allegations of Robert's misconduct "impermissibly expand[ed] the scope of the trust petition with insufficient time for [Robert] and other parties to prepare adequately for trial."

The court granted Robert's motion for summary judgment "because Larry's claims are all barred by the three-year statute of limitations." The court then entered judgment in favor of Robert.

Larry appeals. He contends the trial court: (1) abused its discretion in denying him leave to amend his petition; and (2) erred in granting summary judgment in Robert's favor.

DISCUSSION

I

*The Trial Court Acted Within Its Discretion*

*To Deny Larry's Motion For Leave To Amend His Petition*

Larry contends the trial court abused its discretion in denying his motion for leave to amend his petition. He argues "there [we]re no facts supporting prejudice to [Robert]"

---

**2** Robert's hearing on the motion for summary judgment was originally set for June 13, 2013, but was later continued by the court to July 11, 2013. Larry's hearing on the motion to amend his petition was scheduled for May 16, 2013, and the court issued a tentative ruling against the amendment on that day.

and his motion was not "unreasonably delayed."  As we explain, the trial court was within its discretion to deny Larry's motion to amend the petition for relief from breach of trust because the motion to amend was unreasonably delayed.

A

*The Law*

A trial court has " 'wide discretion in allowing the amendment of any pleading,' " and its ruling " 'will be upheld unless a manifest or gross abuse of discretion is shown.' " (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486.)   "The law is also clear that even if a good amendment is proposed in proper form, unwarranted delay in presenting it may--of itself--be a valid reason for denial." (*Roemer v. Retail Credit Co.* (1975) 44 Cal.App.3d 926, 939-940.)  Thus, appellate courts are less likely to find an abuse of discretion where the proposed amendment was offered after a long unexplained delay or where there was a lack of diligence.  (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175.)

B

*There  Was An Unreasonable Delay By Larry In Proposing His Amendments*

Larry filed his proposed amended petition on April 15, 2013.  The proposed amended petition made two changes, both of which were unreasonably delayed.

The first thing the amended petition of April 2013 proposed to do was change the theory of Larry's case from negligence to "bad faith" in laser leveling the fields.  This amendment was unreasonably delayed by almost five years.

On June 5, 2008, Larry filed the instant petition for relief from breach of trust that alleged Robert "violated his duty . . . to exercise reasonable skill, care and diligence in the administration of the trust by," among other things, laser leveling the fields.  A month and one-half later, on July 29, 2008, Robert filed his response to Larry's petition alleging that under the terms of the trust, Robert as trustee was responsible only for his acts and omissions " 'in bad faith.' "  This was indeed correct, as the trust created over 30 years

9

ago stated that " 'a trustee shall be responsible only for such trustee's own acts and omissions in bad faith.' "

Despite being alerted to the bad faith standard by Robert in July 2008, Larry did not amend his petition to include allegations of bad faith until his proposed amendment on April 15, 2013 that pled Robert's "bad faith" in laser leveling the fields. This was approximately a five-year unwarranted delay between when Larry was notified of the correct standard and when Larry proposed amending his petition to allege the correct standard. Indeed, as late as December 2012 in a declaration filed by his attorney attached to a motion in this case, Larry continued to assert that Robert "breached" his "clear duties" as a trustee by failing "to act prudently and reasonably."

The second thing the amended petition of April 2013 proposed to do was add two new allegations. The first new allegation of breach of trust was Robert "knowingly and intentionally fail[ed] to implement [a 1996 wetlands plan and agreement] which subject[ed] the Trust to continued liability exposure." The second new allegation of breach of trust was Robert "incurr[ed] substantial fees and costs to the Trust to appeal the [Department] decision in an effort primarily to compensate for his own grossly negligent, reckless, acts in bad faith and to help defend his personal liability as a result." The unreasonable delay here stems from the fact that two new allegations were added over a year after discovery had been completed in February 2012, as the trial court also found.

On appeal, Larry seeks to distance himself from that delay by claiming that at the time of his motion to amend his petition for breach of trust, "the stay of the case had only recently been lifted on January 15, 2013." But that is not what the record shows. On July 3, 2012, the trial court stayed the instant petition for relief from breach of trust "until appellate review of the District Court's judgment is completed and the District Court's judgment is final or until this Court holds the Status Conference [on September 24, 2013] and decides to terminate or otherwise adjust the stay, *whichever comes first*." (Italics added.) Federal appellate review was completed September 19, 2012, when the Ninth

10

Circuit Court of Appeals granted the Department's motion to voluntarily dismiss the case. Larry's own counsel stated that the "federal action has now been brought to a close as the [Department] appeal has been dismissed, *and as a result the district court judgment has become final.*" (Italics added.) Thus, even taking into account the stay, Larry filed his motion to amend seven months after the stay was lifted, which still would be an unreasonable delay given that he had known the facts behind the two new allegations for approximately 14 months. (See *Manha v. Union Fertilizer Co.* (1907) 151 Cal. 581, 584-585 [no abuse of discretion in denying a leave to amend where the party seeking leave to amend waited two months after knowing "practically all the matters set forth in its amended [pleading]" to seek that leave].)

In summary, the trial court was well within its discretion to deny Larry leave to file his amended petition based on unwarranted delay. (*Melican v. Regents of University of California*, *supra*, 151 Cal.App.4th at p. 175; *Roemer v. Retail Credit Co.*, *supra*, 44 Cal.App.3d at pp. 939-940.)

II

*The Court Correctly Granted Summary Judgment In Favor Of Robert*

The trial court granted summary judgment "because Larry's claims are all barred by the three-year statute of limitations." Larry contends the trial court erred because Larry was within the three-year statute of limitations, and if he was beyond those three years, the statute was tolled based on fraud and concealment. We agree with the trial court that Larry missed the three-year statute of limitations, and we find that any fraud or concealment did not alter the application of the statute of limitations. We explain the law and facts below.

A trust beneficiary's claim against a trustee for breach of trust is barred unless brought within three years of when the beneficiary either: (1) received a written report disclosing the existence of the claim; or (2) "discovered, or reasonably should have discovered, the subject of the claim." (Prob. Code, § 16460, subd. (a)(1)-(2).)

11

Here, Larry filed the petition for relief from breach of trust on June 5, 2008. Thus, if Larry discovered or reasonably should have discovered the subject of his claims before June 5, 2005, his claims are barred by the three-year statute of limitation. (Prob. Code, § 16460.)

We begin by recapping the subject of Larry's claims. On June 5, 2008, Larry alleged in his petition Robert breached his duty as trustee by the following acts: One, in "2002 and 2003", Robert "caused Fields 7 and 8A . . . to be laser leveled." Two, "[i]n May of 2005, Trustee sold the properties to developer Angelo Tsakopoulos for . . . $10,000.00/acre without providing for the restoration or mitigation of the wetland." And three, Robert "never . . . paid" a reimbursement to the Department for $69,606 "that the Trust received in federal farm subsidies for the 2002-2005 crop years," which he was required to pay "as a result of the wetland violation." As to this last act, Larry alleged that the Department notified Robert, Larry, and other beneficiaries of the money that was due in a letter dated June 8, 2005, and also notified them "if the land has been sold without restoring the wetland, all beneficiaries of the Trust would be permanently ineligible for federal farm programs."

All of these issues derive from Robert's laser leveling of the rice fields. And, Larry knew of the laser leveling before June 5, 2005. Larry demonstrated his knowledge on February 3, 2005, when he wrote a letter to Robert stating he could no longer stand by and allow Robert to oversee the trust, which was partly due to Robert's laser leveling of the fields, which " 'caused the [trust] to be disqualified from any Government support now or in the future'" and which resulted in the estate "now ow[ing] $68,000 back to the Government."

Larry claims, though, he did not know the scope of harm from the laser leveling, namely, that he would also be individually barred from receiving subsidies for farming other properties, until June 5, 2008, when the Department sent him a letter notifying him of his individual ineligibility for Department programs.

12

There are three problems with Larry's scope of harm argument.

One, Larry did not have to know the exact scope of harm. It is sufficient if the plaintiff "has suffered appreciable harm and knows or suspects that . . . blundering is its cause." (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 898.) Larry knew by January 28, 2005, that he had suffered appreciable harm by the laser leveling and knew that Robert, in his role as trustee, had caused that harm. On that date, Larry's attorney wrote to Robert's attorney about Robert's laser leveling "misconduct" that resulted in "the government's imposition of the sanctions and termination of all rights to farming subsidies, along with an order for reimbursement of one year's subsidy, making the continued operation of the farm not economically feasible."

Two, Larry claims the " 'essential' fact" that formed "the basis of his claim" was his individual ineligibility for Department benefits because that was "the basis of his damages," but Larry's individual ineligibility was not the only basis for his claim and his damages. Larry's June 5, 2008, petition for relief from breach of trust also included Larry's allegations that because of Robert's breach of trust, "the Trust property" "[was] harmed in the following ways:" he "either as an individual or under his own sub-trust" could not participate in farm subsidy programs for 2006 and 2007, and "all other beneficiaries [w]ere still obligated to pay reimbursement the [Department]" when Robert "should have compelled payment of these monies by Mr. Tsakopoulos pursuant to the terms of the indemnity agreement." In his petition, Larry also prayed that Robert "be compelled to perform his duty to protect the Trust property. . . ." Thus, contrary to Larry's argument on appeal, his individual ineligibility for Department benefits was not the essential fact for determining the commencement of the statute of limitations.

And three, Larry was at least on inquiry notice as early as December 2004 or January 2005. "[T]he limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person *on inquiry* . . . .' " ' [Citation.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that

is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111.)

In a December 27, 2004, facsimile, Larry wrote to Robert that because of "new found discoveries we may be petitioning the court for a new Trustee and damages relating to the Trust and it[]s members." A month later, in January 28, 2005, Larry's attorney followed up with a letter to Robert's attorney discussing Robert's laser leveling "misconduct" that resulted in "the government's imposition of the sanctions and termination of all rights to farming subsidies . . . . " A few days later, on February 3, 2005, Larry wrote a letter to Robert stating Larry could no longer stand by and allow Robert to oversee the trust, which was partly due to Robert's laser leveling of the fields, which "caused the [trust] to be disqualified from any Government support now or in the future" and which resulted in the estate "now ow[ing] $68,000 back to the Government." Larry followed up this letter with a petition to remove Robert as trustee dated March 14, 2005, based on Robert's laser leveling of the farmlands. Thus, Larry had not only the incentive to sue, he did sue, just not for relief from breach of trust, but rather, to remove Robert as trustee.

Given these facts, Larry was at least on inquiry notice in December 2004 or January 2005, which was more than three years before he filed his June 5, 2008, petition for relief from breach of trust. Thus, the trial court correctly found "the statute had already been running for a substantial period of time no later than late 2004."[3]

---

[3] Because we agree with the trial court that the statute began running in 2004, Larry's tolling argument (that the statute of limitations were tolled from May 2005 to June 8, 2005 because of fraud) gets him nowhere. The fraud Larry alleged was that

14

DISPOSITION

The judgment is affirmed.

      ROBIE      , Acting P. J.

We concur:

      BUTZ      , J.

      MURRAY      , J.

---

Robert and Tsakopoulos had a private agreement not to participate in any Department programs so that they would be exempt from having to restore the wetlands.