Filed 5/27/15  Ison v. Google CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CARLA ISON,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>GOOGLE, INC. et al.,<br><br>     Defendants and Respondents. | H039439<br>(Santa Clara County<br>Super. Ct. No. 1-10-CV163032) |

Carla Ison, Ph.D., proceeding in propria persona with the assistance of a limited-scope attorney, appeals from a judgment entered after the trial court denied her leave to file a fifth amended complaint and granted summary judgment in favor of defendants Yahoo! Inc. (Yahoo) and Google, Inc. (Google).  Ison is a clinical psychologist with a private practice located in Mountain View, California.  She began marketing her clinical psychology services online in 2005 by contracting with Yahoo to host her Web site (www.carlaisonphd.com) and using Google's advertising service, AdWords.  Ison maintains she holds common law trademark rights in her name (Carla Ison, Ph.D., and variations thereon) and domain name (www.carlaisonphd.com) (collectively, the Ison Marks).  She contends defendants infringed, diluted, and misappropriated the Ison Marks by permitting Internet searches for the Ison Marks on their search engines to generate what she deems to be unauthorized search results.  Those unauthorized search results include links to Web sites other than her own, including those of third party advertisers.

According to Ison, consumers were likely to be deceived into believing the unauthorized search results were sponsored by and/or affiliated with her or her practice.

The trial court granted summary judgment in favor of defendants, concluding the Ison Marks were not entitled to trademark or trade name protection because they had not acquired secondary meaning. The court denied Ison's motion for leave to amend--filed in the midst of briefing on defendants' summary judgment motions--on the grounds that her request was untimely and procedurally defective, that allowing further amendment would prejudice the defendants, and that the proposed fifth amended complaint asserted time-barred claims. On appeal, Ison contends the trial court erred in three ways: by denying her leave to amend, granting summary judgment for defendants, and refusing to compel certain discovery from defendants. We affirm.

I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

A.      *Ison's Practice and Online Marketing Efforts*

Ison opened her practice in August 2004. She advertised through direct mailings and in the Yellow Pages advertisements in Mountain View and surrounding communities. In early 2005, Ison set up a Web site with the domain name carlaisonphd.com to promote her practice. She contracted with Yahoo to host her Web site on its servers.

---

[1] We take the relevant facts from the record that was before the trial court when it ruled on defendants' summary judgment motions. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1034-1035.) Unless otherwise noted, the facts recited herein are undisputed. Where the facts are in dispute, we recount Ison's version of the facts, but only to the extent her version is supported by citation to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C) [matters referenced from the record in appellate briefs must be supported "by a citation to the volume and page number of the record where the matter appears"].) More often than not, Ison's briefs lack the requisite record citations. We disregard any factual assertions she makes that are unaccompanied by citations to the record. (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947 ["Statements of fact that are not supported by references to the record are disregarded by the reviewing court."].)

Ison began using Google's AdWords on June 6, 2005, to further publicize her practice online. Her Google advertisements included the Ison Marks (i.e., her name and domain name) and business contact information. The terms of her contract with Google permitted it to place her ads on Google content or property and the content or property of Google's third party partners. Ison expended approximately $14,000 on advertising between 2004 and 2012, including $6,716.37 on Google AdWords services.

### B.    *Ison Sues Over Unauthorized Search Results*

Ison conducted searches for her name and domain name on Yahoo and Google. The search results included sponsored and nonsponsored links to pages containing no information about her. Among the sponsored links were ads for people-finding services, other clinical psychologists, shopping Web sites, and online universities offering Ph.D. degrees. Nonsponsored links appearing in the search results included links to a Yahoo finance page, a thesaurus.com page offering synonyms for the phrase "cat scratch disease," and the Web site www.parasiteshuman.com, among others.

Ison filed her initial complaint against Google on February 3, 2010, and added Yahoo as a defendant in the second amended complaint. A series of demurrers not at issue on appeal followed.[2]

### C.    *The Fourth Amended Complaint*

Ison filed the operative fourth amended complaint on December 13, 2010. That complaint asserted causes of action against Yahoo and Google for (1) common law trade name/service mark infringement; (2) contributory common law trade name/service mark infringement; (3) vicarious common law trade name/service mark infringement; (4)

---

[2] Ison was proceeding in propria persona when she initially filed suit. She contends she interviewed 25 attorneys over the course of two years before she found one willing to represent her. She was represented by a few different attorneys during the course of the proceedings in the trial court.

3

dilution; (5) misappropriation; (6) money had and received; and (7) violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq. (UCL)).

The fourth amended complaint alleged that Ison's "lawsuit relates to the use of trade names on the Internet" and that she was suing defendants because "problem of misuse of [her alleged trademarks] has occurred on [their] websites and through [their] technology . . . , as well as in connection with advertisements and other information provided and generated by" them. Among other things, Ison alleged defendants permit third party advertisers to purchase trademarks--including her own alleged marks--as keywords to trigger the placement of their sponsored links (i.e., ads). This practice, as well as defendants' practice of otherwise "inappropriately link[ing]" Ison's name "with [unauthorized] advertisements and other search results," allegedly "created confusion among colleagues, other professionals, and current and potential patients."

The cause of action for money had and received was stricken from the fourth amended complaint pursuant to a joint stipulation of the parties on December 22, 2010.[3] The trial court sustained, without leave to amend, the defendants' demurrers to the vicarious trademark infringement claim.

### D. *Motions for Summary Judgment*

Yahoo and Google separately moved for summary judgment or, in the alternative, summary adjudication, on September 14, 2012 and September 28, 2012, respectively. While those motions were pending, on November 19, 2012, Ison moved for leave to file a fifth amended complaint. That request is discussed in greater detail below. Also on November 19, 2012, the court granted Ison's request to continue the hearing on defendants' summary judgment motions until January 8, 2013.

---

[3] We grant Yahoo's motion requesting that we take judicial notice of the trial court's December 22, 2010 order striking Ison's money had and received claim from the fourth amended complaint. (Evid. Code, §§ 452, subd. (d), 459.)

4

In support of their motions, both defendants relied on the results of a consumer survey conducted by Hal Poret, a survey researcher retained by Yahoo. Poret has conducted more than 150 consumer perception surveys regarding trademarks and has provided testimony as an expert in survey research in numerous federal court cases. At Poret's direction, 309 respondents from San Francisco, San Mateo, and Santa Clara counties who indicated they had met with a psychologist, therapist, or counselor in the past 12 months or more were likely to meet with such a professional in the next 12 months were surveyed by phone or online.[4] Of those respondents, 126 were residents of Mountain View--where Ison's practice is located--and neighboring towns. Respondents were asked whether they had heard of any of the therapists or counselors in a list of six names, including Ison's. The list also included the names of four other therapists who practice in the same geographic area as Ison and a fictitious name that served as a control to measure the rate of false positives. Of the 309 respondents, 5.2 percent had heard of Ison and 8.1 percent said they had heard of the fictitious therapist. Among the 126 respondents living in or near Mountain View, 1.6 percent said they had heard of Ison; 3.2 percent said they were aware of the fictitious name. According to Poret, the net level of awareness of Ison was less than zero percent, as the rate of awareness of her name did not exceed the false positive rate.

The trial court granted summary judgment in favor of Yahoo and Google in an order filed on January 23, 2013. As an initial matter, the court concluded that all of Ison's claims depended on the allegation that the Ison Marks are protected trademarks/trade names. The court ruled that defendants had presented evidence,

---

[4] The universe of respondents was further narrowed to those who had met or were likely to meet with a psychologist, therapist, or counselor regarding career or business counseling; depression, anxiety, stress or related issues; a life transition, such as divorce, change of health, relocation, or change of employment; relationship, couples, or family counseling; creative pursuits, career planning, or professional development, or psychotherapy.

5

including the Poret survey, establishing that the Ison Marks had not acquired the secondary meaning necessary to warrant trademark protection. The trial court further ruled that Ison had failed to raise any triable issues of material fact, noting she had presented no evidence that the Ison Marks had acquired secondary meaning.

### E.     Ison's Motion to Amend

In her proposed fifth amended complaint, Ison sought to add a new individual defendant (an alleged Google employee) and to assert four new causes of action for (1) statutory misappropriation (Civ. Code, § 3344); (2) fraudulent concealment (*id.*, § 1710); (3) negligence, or in the alternative, recklessness; and (4) negligent interference with prospective economic advantage. She also sought to amend her existing claims for common law misappropriation and violation of the UCL. The new and amended claims relied on new factual allegations, including that defendants failed to warn Ison of the risks of using their advertising and/or web hosting services; concealed and failed to disclose facts regarding their advertising and/or web hosting services; made false promises regarding their advertising services; and engaged in deceptive advertising. She further sought to add allegations that she had prospective economic relationships with potential clients and the media of which defendants knew or should have known.

In her motion for leave to amend, Ison argued her proposed amendments were based on facts learned through discovery, including (1) evidence produced by Google showing the Ison Marks were used as keywords by third parties; (2) evidence Ison produced showing she relies on the Internet for new client referrals; and (3) the absence of any evidence produced by defendants "evidencing an effort to adequately inform and warn advertising customers that their name and marks can be linked . . . to unsavory and unrelated Internet advertising" for long periods of time. Ison further contended she should be granted leave to amend because she secured new counsel--SaraLynn Mandel-- in August 2012. Ison also maintained that permitting her to amend would not delay the trial, which was set for February 11, 2013. Ison's motion was accompanied by a

6

declaration from attorney Mandel stating she was retained on August 23, 2012 and that, after reviewing the evidence, it was her "opinion that the evidence supports the additional claims proposed."

The trial court denied Ison's leave to amend on January 23, 2013, reasoning that (1) the motion was untimely given the pending trial date and prior continuances; (2) granting leave would prejudice defendants by requiring them to "virtually re-litigate an essentially new case"; (3) the new causes of action lacked merit and were time-barred; and (4) the motion was procedurally defective as Ison had failed to explain why it should be granted.

### F. *Judgment and Notice of Appeal*

The court entered judgment in favor of defendants on February 8, 2013. Ison timely appealed on March 22, 2013.

## II. DISCUSSION

### A. *Pending Motions*

As an initial matter, we address the numerous currently pending motions.

First, as discussed above, Yahoo's request for judicial notice of the trial court's December 22, 2010 order is granted. (Evid. Code, §§ 452, subd. (d), 459.)

Second, Ison's "Motion for Judicial Notice, or, in the Alternative, to Augment the Record"--which are identical--are granted in part and denied in part. We shall take judicial notice of the trial court's July 3, 2010 order sustaining in part and overruling in part defendants' demurrers to the second amended complaint. (Evid. Code, §§ 452, subd. (d), 459.) We decline to take judicial notice of the material on the Web sites Ison cites in her reply brief in support of her contention that the Communications Decency Act (47 U.S.C. § 230) does not bar any of the claims in her proposed fifth amended complaint, as we do not reach the Communications Decency Act issue. (*Hailey v. California Physicians' Service* (2007) 158 Cal.App.4th 452, 464 [denying request to take judicial notice of irrelevant documents].)

7

Third, Yahoo's motion to strike portions of Ison's reply brief is denied. Yahoo moves this court, pursuant to California Rules of Court, rule 8.204(e), to strike (1) all references to Ison's claim for money had and received, given it was stricken from the fourth amended complaint, and (2) Ison's Communications Decency Act argument, to the extent it is directed at Yahoo, and the citations to the content of Internet Web pages that purportedly support that argument. We shall, however, disregard Ison's arguments, to the extent they are irrelevant, unsupported by the record, or raised for the first time on reply.

Finally, Google's motion to strike portions of Ison's reply brief is denied. Again, however, we shall disregard any irrelevant or unsupported arguments, as well as extra-record facts. We grant Google's alternative request to augment the record on appeal to include Ison's second amended complaint. (Cal. Rules of Court, rule 8.155(a)(1).)

## *B*. *General Rules of Appellate Review*

In conducting our appellate review, we presume that a judgment or order of a lower court is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Ibid.*) To affirmatively show error, a party challenging a judgment or an appealable order has the burden of producing and citing to an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; Cal. Rules of Court, rule 8.204(a)(1)(C) [matters referenced from the record in appellate briefs must be supported "by a citation to the volume and page number of the record where the matter appears"].) Where the appellant fails to provide an adequate record as to any issue the appellant has raised on appeal, the issue must be resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) Likewise, failure to include citations to the appellate record may result in forfeiture of a claim. (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 800-801.)

The appellant must also present argument supported by relevant legal authority as to each issue raised on appeal. " '[E]very brief should contain a legal argument with

8

citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Ison is not exempt from compliance with these rules because she is representing herself. A party who chooses to act as his or her own attorney " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

### *C.* *The Trial Court Did Not Abuse its Discretion in Denying Ison's Request For Leave to File a Fifth Amended Complaint*

#### *1.* *Legal Principles and Standard of Review*

A trial court has wide discretion to allow the amendment of pleadings and the exercise of that discretion will not be disturbed on appeal absent a showing of " ' "manifest or gross abuse of discretion." ' " (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175 (*Melican*).) "Nevertheless, it is also true that courts generally should permit amendment to the complaint at any stage of the proceedings, up to and including trial." (*Ibid*.) Exceptions to the liberal policy of allowing amendment exist, however. For example, that policy will not prevail where the opposing party will be prejudiced by the amendment. (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 487.) And "unwarranted delay in presenting [the amendment] may--of itself--be a valid reason for denial" (*Roemer v. Retail Credit Co.* (1975) 44 Cal.App.3d 926, 939-940) on grounds of "lack of diligence in offering the amendment after knowledge of the facts." (*Id*. at p. 940; *Melican*, *supra*, at p. 175 ["appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is ' "offered after long unexplained delay . . . or where there is a lack of diligence" ' "].)

Where a motion for summary judgment is pending, leave to amend should be granted if "the facts indicate that a plaintiff has a good cause of action which is

9

imperfectly pleaded." (*Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1067.) But leave need not be readily granted where the plaintiff seeks to assert a different theory of recovery, as "[i]t would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a 'moving target' unbounded by the pleadings." (*Melican*, *supra*, 151 Cal.App.4th at p. 176; *Van v. Target Corp.* (2007) 155 Cal.App.4th 1375, 1387, fn. 2 ["amendments are usually allowed after summary judgments have been filed only to repair complaints that are legally insufficient," not to "state a different theory of recovery"].)

### 2. *Analysis*

We discern no abuse of discretion in the trial court's ruling. Ison did not merely seek to fix imperfectly pleaded claims. Instead, she sought to add new bases for liability premised on new facts nearly two years after filing the fourth amended complaint, three months before trial, and in response to summary judgment motions. As her counsel admitted at the hearing on the motion to amend, the proposed amendments were "guaranteed" to result in a demurrer. Further discovery to flesh out the factual bases for Ison's proposed amendments also would have been necessary, as would a trial continuance.

Nevertheless, Ison offered no valid justification for her delay in seeking to amend. While she argued she had learned new facts in discovery, the only supposedly new facts she identified were known to her at the time she filed the fourth amended complaint.[5]

---

[5] In her motion to amend, Ison identified the following new evidence: (1) evidence produced by Google showing the Ison Marks were used as keywords by third parties; (2) evidence Ison produced showing she relies on the Internet for new client referrals; and (3) the absence of any evidence produced by defendants "evidencing an effort to adequately inform and warn advertising customers that their name and marks can be linked . . . to unsavory and unrelated Internet advertising" for long periods of time. But Ison alleged Google had permitted third parties to use the Ison Marks as keywords in the fourth amended complaint. Information about her own Internet referrals plainly was (continued)

10

And the fact that she had retained new counsel "cannot excuse the delay; for, otherwise, counsel would be inevitably substituted whenever a party desired to belatedly amend its complaint." (*Del Mar Beach Club Owners Assn. v. Imperial Contracting Co.* (1981) 123 Cal.App.3d 898, 915.) Accordingly, in view of Ison's "lack of diligence in offering the amendment after knowledge of the facts," we can find no abuse of discretion, particularly given the amendments would inject new issues requiring further motion practice and discovery. (*Roemer v. Retail Credit Co.*, *supra*, 44 Cal.App.3d at p. 940; *Melican*, *supra*, 151 Cal.App.4th at p. 175; *Green v. Rancho Santa Margarita Mortgage Co.* (1994) 28 Cal.App.4th 686, 692 ["There is a platoon of authority to the effect that a long unexcused delay is sufficient to uphold a trial judge's decision to deny the opportunity to amend pleadings, particularly where the new amendment would interject a new issue which requires further discovery"]; *P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345 [no abuse of discretion in denying leave to amend where plaintiff "did not seek leave to amend until after the trial readiness conference, an amendment would require additional discovery and perhaps result in a demurrer or other pretrial motion, and [plaintiff] offered no explanation for the delay"].)

Ison's failure to comply with procedural requirements applicable to motions for leave to amend confirms our conclusion that there was no abuse of discretion. Rule 3.1324(b) of the California Rules of Court requires a motion to amend pleadings before trial be accompanied by a sworn declaration that specifies the effect of the amendment, why it is necessary and proper, when the facts giving rise to the amended allegations were discovered, and the reasons why the request was not made earlier. The attorney declaration submitted with Ison's motion declaration failed to provide any of this information.

---

available to her since the inception of the suit. And she knew at least that *she* had not received any warnings from defendants at the time she filed suit.

11

### D. **The Trial Court Did Not Err in Granting Summary Judgment in Favor of Yahoo and Google**

#### 1. *Standard of Review*

In reviewing an order granting summary judgment, we review the entire record de novo in the light most favorable to the nonmoving party to determine whether the moving and opposing papers show a triable issue of material fact. (*Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214.) "A defendant moving for summary judgment has the burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action." (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945 (*Jones*).) A defendant cannot "simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854, fn. omitted), but "*must* 'support[]' the 'motion' with evidence." (*Id.* at p. 855.) "The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. The defendant may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence--as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Ibid.*) "If a defendant's moving papers make a prima facie showing that justifies a judgment in its favor, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact." (*Jones*, *supra*, at p. 945.)

#### 2. *All of Ison's Claims Require Proof of Trademark Rights in the Ison Marks*

Defendants moved for summary judgment on the theory that Ison's claims lacked merit because she could not establish that she had trademark rights in the Ison Marks. Thus, a threshold issue is whether a valid, protectable mark is an element of each of the remaining causes of action in the fourth amended complaint, which include (1) common law trade name/service mark infringement; (2) contributory common law trade

12

name/service mark infringement; (3) dilution; (4) misappropriation; and (5) violation of the UCL.

The existence of a protectable mark plainly is an element of the first three claims. (*Transgo*, *Inc*. *v*. *Ajac Transmission Parts Corp*. (9th Cir. 1985) 768 F.2d 1001, 1014 ["The threshold issue in any action for trademark infringement is whether the words used by a manufacturer in connection with his product are entitled to protection."]; *Franklin Mint Co*. *v*. *Manatt*, *Phelps & Phillips*, *LLP* (2010) 184 Cal.App.4th 313, 320 (*Franklin Mint*) [no viable cause of action for trademark dilution claim absent protectable trademark].)

"The elements of a cause of action for common law misappropriation are: '(1) the plaintiff "has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize the 'thing' as a kind of property right"[;] (2) the defendant "has appropriated the 'thing' at little or no cost, such that the court can characterize defendant's actions as 'reaping where it has not sown' "[;] and (3) the defendant "has injured plaintiff by the misappropriation." ' " (*Hollywood Screentest of America*, *Inc*. *v*. *NBC Universal*, *Inc*. (2007) 151 Cal.App.4th 631, 650.) In her misappropriation claim, Ison alleged that she "created the goodwill, value, secondary meaning, and popularity of the Carla Ison Marks through extensive time, labor, skill and money" and that defendants "misappropriat[ed] . . . the Carla Ison Marks" by selling the rights to them to third party advertisers. The fourth amended complaint defined "the Carla Ison Marks" as "the trade names . . . that identify Carla Ison, doing business as Carla Ison, Ph.D., or www.carlaisonphd.com to Internet users." Thus, Ison alleged defendants misappropriated her alleged *trade names*, thereby making the existence of such protectable trade names crucial to her misappropriation claim. Given the manner in which the fourth amended complaint defined "the Carla Ison Marks," we cannot agree with Ison's contention on appeal that she also asserted misappropriation of her *personal* name.

13

Ison maintains her UCL claim "piggyback[s]" or is premised on defendants' unlawful misappropriation.[6] She likewise argued below that her "claims for unfair competition . . . 'ride the coattails' of her claims for misappropriation," citing *Kirby v. Sega of America*, *Inc.* (2006) 144 Cal.App.4th 47, 57, footnote 3 (concluding that plaintiff's UCL claim rode "the coattails of her privacy claims" because they were "predicated on the unauthorized appropriation of her likeness or identity"). Because a valid, protectable mark is crucial to Ison's misappropriation claim, which in turn forms the basis for her UCL claim, the existence of a protectable mark is integral to the latter claim as well. In sum, all of Ison's claims require proof the Ison Marks are protectable trademarks.

### 3. No Triable Issue of Fact Exists as to Whether Ison Has Trademark Rights in the Ison Marks

A mark is protectable as a trademark under the common law if it is inherently distinctive or has acquired distinctiveness (so-called "secondary meaning"). (*Franklin Mint*, *supra*, 184 Cal.App.4th at p. 336; *Two Pesos*, *Inc. v. Taco Cabana*, *Inc.* (1992) 505 U.S. 763, 769 (*Two Pesos*).) Descriptive words and symbols and personal names are not inherently distinctive and, accordingly, are not entitled to trademark protection unless they have acquired secondary meaning. (*Franklin Mint*, *supra*, at p. 336; *Two Pesos*, *supra*, at p. 769.)

A mark has acquired secondary meaning "if the public comes to associate [it] with a specific source." (*Kendall-Jackson Winery v. E. & J. Gallo Winery* (9th Cir. 1998) 150 F.3d 1042, 1047; *Franklin Mint*, *supra*, 184 Cal.App.4th at p. 338 ["secondary meaning 'occurs when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." ' "].) "Secondary

_____

[6] She further contends it is based on her money had and received claim, but, as noted, she stipulated to the dismissal of that claim.

14

meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." (*Filipino Yellow Pgs. v. Asian Journal Publications* (9th Cir. 1999) 198 F.3d 1143, 1151, citing 2 J. Thomas McCarthy, Trademarks and Unfair Competition (4th ed. 1997) § 15:30.)

The parties agree that the Ison Marks are descriptive, and thus require a showing of secondary meaning to merit trademark protection. We concur; the Ison Marks are variations on Ison's personal name, including a domain name comprised of ".com" as the top-level domain and her personal name as the second-level domain. (*Brookfield Communications v. West Coast* (9th Cir. 1999) 174 F.3d 1036, 1055.) As noted, personal names are protectable only if they have acquired secondary meaning. And, "[b]ecause many companies use domain names comprised of '.com' as the top-level domain with their corporate name or trademark as the second-level domain, [citation], the addition of '.com' is of diminished importance in distinguishing the mark." (*Ibid*.) In other words, the combination of Ison's personal name and ".com" is no more distinctive than is her personal name alone.

Defendants moved for summary judgment on the theory that the Ison Marks had not acquired secondary meaning. As the parties moving for summary judgment, defendants bore the initial burden to produce evidence showing that the Ison Marks had not acquired secondary meaning or that Ison could not establish that element of her causes of action. They carried that burden by submitting the Poret survey, which shows that potential consumers of Ison's services are unaware of her name.[7]

---

[7] One might question whether mere awareness of a mark evinces secondary meaning. (See *Ralston Purina Co. v. Thomas J. Lipton, Inc.* (S.D.N.Y. 1972) 341 F.Supp. 129, 134 [plaintiff's survey evidence showing consumers had knowledge of its brand name was not probative of secondary meaning]; *Surveying Secondary Meaning* (continued)

15

The burden then shifted to Ison to present evidence sufficient to create a triable issue of material fact on the question of secondary meaning. She contends she carried that burden by producing evidence of five years of continuous and exclusive use of the Ison Marks and evidence of copying by the defendants. These contentions suffer from numerous shortcomings.

As an initial matter, Ison does not support her claims with record citations. With respect to her length of use of the Ison Marks, she cites her deposition testimony that she started her practice in August 2004, which says nothing about when she first used the Ison Marks (particularly the domain name carlaisonphd.com). As to exclusivity, Ison asserts--without citation to record evidence--that she "has done extensive searches and has not found anyone else who shares her name and also has a Ph.D." And she merely notes that copying evinces secondary meaning without pointing to any evidence of copying. Ison's failure to cite to the record is particularly problematic here given the size of the record--7,938 pages. "By simply claiming, but not showing by citation to the record, that she" submitted circumstantial evidence of secondary meaning, Ison "has forfeited" her argument that she presented evidence creating a triable issue of material fact. (*In re S.C.* (2006) 138 Cal.App.4th 396, 420.)

---

(1994) 84 Trademark Rep. 155, 174-175 [criticizing use of brand awareness survey to determine existence of secondary meaning]; but see *Atlanta Allergy & Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta, LLC* (N.D. Ga. 2010) 685 F.Supp.2d 1360, 1374 [survey "evidence of awareness and familiarity of Plaintiff's name, is probative of the question of whether Plaintiff's mark has acquired secondary meaning"]; *Sprinklets Water Center, Inc. v. McKesson Corp.* (E.D. Mich. 1992) 806 F.Supp. 656, 661-662 [considering results of brand awareness survey as evidence of secondary meaning].) However, before one comes to associate a mark with a specific source one must be aware of the mark. Accordingly, evidence that members of the relevant population are unaware of a mark evinces it has not acquired a secondary meaning. In any event, Ison does not contest the admissibility of the Poret survey, nor does she address how much weight it should be accorded. In fact, she mentions the survey for the first time in her reply brief, deriding it (without explanation) as "spurious" and "inaccurate."

16

Ison's failure to cite the record notwithstanding, her reliance on cases treating a defendant's intentional copying of a plaintiff's mark as evidence of secondary meaning is misplaced. The rationale underlying such cases is that "such proof of copying . . . , without any opposing proof," gives rise to the inference that the defendant intended to "attempt to realize upon a secondary meaning that is in existence" because "[t]here is no [other] logical reason for the precise copying." (*Audio Fidelity*, *Inc*. *v*. *High Fidelity Recordings*, *Inc*. (9th Cir. 1960) 283 F.2d 551, 558; *Winning Ways*, *Inc*. *v*. *Holloway Sportswear*, *Inc*. (D. Kan. 1996) 913 F.Supp. 1454, 1473-1474 ["Intentional copying suggests the existence of secondary meaning when the circumstances present no other justification for the copying except to take advantage of the good will of the first user of the trade dress."].) But here, there is a logical reason for why the Ison Marks appeared on third party Web sites--Ison's advertisements, which contain the Ison Marks, appeared on those sites as part of her Google AdWords campaign. By contrast, it is not logical to infer that defendants--who do not compete with Ison in the market for psychological services--were trying to " 'pass off [their services] as plaintiff's.' " (*Chrysler Corp*. *v*. *Vanzant* (C.D. Cal. 1999) 44 F.Supp.2d 1062, 1081.) While we cannot say for sure why the Ison Marks appeared on third party Web sites (assuming that is the supposed "copying" to which Ison refers, as she does not elaborate), for the foregoing reasons, we cannot reasonably infer from the fact of their appearance on third party Web sites that they have secondary meaning. Moreover, Ison's intentional copying argument was not raised below, and accordingly was forfeited. (*Kaufman & Broad Communities*, *Inc*. *v*. *Performance Plastering*, *Inc*. (2006) 136 Cal.App.4th 212, 226.)

Ison's claim regarding the length of her use of the Ison Marks likewise is without merit. With respect to duration of use, the relevant timeframe is "the period between product introduction and the date Defendants commenced their alleged infringement." (*Continental Lab*. *Products*, *Inc*. *v*. *Medax Intern*. (S.D. Cal. 2000) 114 F.Supp.2d 992, 1004; *Dino*, *Inc*. *v*. *Boreta Enterprises*, *Inc*. (1964) 226 Cal.App.2d 336, 340-341 (*Dino*);

17

*Chrysler Corp. v. Vanzant*, *supra*, 44 F.Supp.2d at p. 1074 [trademark plaintiff "must prove as a factual matter that it had established secondary meaning in the mark . . . prior to the date that the alleged infringer began using the mark"].) Ison began using her marks no earlier than August 2004, and--based on the search results attached to Ison's fourth amended complaint--the alleged infringement began no later than 2007. Thus, the pertinent length of use is, at most, three years.[8] Such a "short period of use does not factor in favor of" finding secondary use. (*Echo Travel, Inc. v. Travel Associates, Inc.* (7th Cir. 1989) 870 F.2d 1264, 1269 (*Echo*).)

That is not to say "a short period . . . *preclude*[*s*] a party from demonstrating secondary meaning." (*Echo*, *supra*, 870 F.2d at p. 1269.) We acknowledge that "[t]here is no fixed rule as to the length of time a symbol must be in use before it can achieve secondary meaning" (2 J. McCarthy, Trademarks and Unfair Competition, *supra*, § 15:54) and that, " '[i]n some cases, [it] is acquired after a brief period of use.' " (*Ibid.*; *Dino*, *supra*, 226 Cal.App.2d at p. 341 [discussing a California case in which "secondary meaning attached to a name in less than five months' time"].) Such might be the case where "a massive advertising campaign" is undertaken when a new product is launched. (2 McCarthy, Trademarks and Unfair Competition, *supra*, § 15:55; *Echo*, *supra*, at p.

---

[8] Ison's primary argument on appeal is that she in entitled to a presumption that the Ison Marks have acquired secondary meaning under section 14205, subdivision (e)(3) of the Business and Professions Code. Ison forfeited that argument by failing to raise it below. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, *supra*, 136 Cal.App.4th at p. 226.) Moreover, it is meritless. The provision on which she relies states that when an applicant seeks to register her personal name as a trademark, the Secretary of State "may accept as evidence that the mark has become distinctive . . . proof of continuous use thereof as a mark by the applicant in this state for the five years before the date on which the claim of distinctiveness is made." (Bus. & Prof. Code, § 14205, subd. (e)(3).) But the record evidence shows only three years of continuous use. (Because Ison has not shown five years of continuous use, we need not reach defendants' contention that the provision has no application here because Ison never sought to register her marks.)

1269.)  But Ison's three years of use alone is insufficient to create a triable issue of material fact on the question of secondary meaning.

For the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of defendants.

### E.    *Ison Fails to Show Error In Connection With Discovery Orders*

Finally, Ison contends "[t]he trial Court abused its discretion by not allowing [her] the chance to fully develop her case through interrogatories and requests for production of documents or her requests for '[person most knowledgeable]' depositions with qualified deponents, which the [defendants] unmeritoriously objected to or refused to adequately provide."  She then cites to three of the trial court's discovery rulings:  a June 15, 2012 order denying in part and granting in part her motion to compel document discovery from the defendants; a November 16, 2012 order quashing her deposition notice for Yahoo's person most knowledgeable; and a December 11, 2012 order denying her motion compel further deposition of Google's person most knowledgeable.  We presume Ison intends to challenge those rulings.  She fails to show prejudicial error.

" 'Management of discovery generally lies within the sound discretion of the trial court.  [Citations.]  Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court.  [Citation.]  The trial court's determination will be set aside only when it has been demonstrated that there was "no legal justification" for the order granting or denying the discovery in question.' "  (*Toshiba America Electronic Components v. Superior Court* (2004) 124 Cal.App.4th 762, 767-768.)

Ison advances no "intelligible legal argument" as to how the trial court abused its discretion in connection with the June 15, 2012 and December 11, 2012 orders.  (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119.)  She " 'merely complains . . . without pertinent argument.' "  (*Ibid.*)  Accordingly, we consider her challenge to those orders to have been abandoned.  (*Ibid.*; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 ["One

19

cannot simply say the court erred, and leave it up to the appellate court to figure out why."].)

With respect to the November 16, 2012 order, Ison says only that the court denied her the "right to question Yahoo! in relation to the website hosting contract that she had with Yahoo!"  The court quashed the deposition notice on grounds it failed to "describe with reasonable particularity the matters on which examination is requested or the materials to be produced," as required by Code of Civil Procedure sections 2025.230 and 2025.220, subdivision (a)(4).  Because the court provided a valid legal justification for its order and Ison does not attempt to explain how the order constituted an abuse of discretion, we conclude she has failed to show error.

## III.   DISPOSITION

The judgment is affirmed.  Yahoo and Google shall recover their costs on appeal.

_____
Premo, Acting P.J.

WE CONCUR:

_____
Elia, J.

_____
Márquez, J.