[Civ. No. 30888. First Dist., Div. Two. Jan. 29, 1975.]

PAUL F. ROEMER, JR., Plaintiff and Respondent, v.
RETAIL CREDIT COMPANY, Defendant and Appellant.

COUNSEL

Cooper, White & Cooper, Charles W. Kenady, Robert R. Callan and Richard A. Seitz for Defendant and Appellant.

Burnhill, Morehouse & Burford, Clifford Burnhill and Cyril Viadro for Plaintiff and Respondent.

OPINION

KANE, J.—Defendant Retail Credit Company appeals for the second time from a jury verdict finding it guilty of libel and awarding plaintiff Paul Roemer, Jr., both compensatory and punitive damages. Judgment for plaintiff at the first trial of this action was reversed because of an erroneous instruction pertaining to the subject of malice (*Roemer* v. *Retail Credit Co.* (1970) 3 Cal.App.3d 368 [83 Cal.Rptr. 540].)

Mr. Roemer is a licensed insurance broker. Defendant is a mercantile agency engaged in the business of providing commercial investigative reports to subscribers—many of whom are insurance underwriters who request such reports in determining whether to license applicant brokers with their companies.

Plaintiff commenced this action in 1965 after discovering that defendant had prepared and submitted investigative reports about him to four insurance companies. Falsity of the reports was admitted by defendant (*Roemer, supra,* p. 370). At both trials of the case, the sole defense was that of the qualified privilege provided by Civil Code, section 47, subdivision 3.[1]

On this appeal defendant contends that: 1) the award of punitive damages must be set aside because (a) the jury was erroneously instructed as to the standard of proof required to establish actual malice and (b) the evidence (regardless of the standard of proof) does not support the jury's finding of malice. As an alternative contention on this subject, defendant claims that the jury's award of $250,000 punitive damages was grossly excessive as a matter of law; 2) the trial court erred in denying defendant's request for leave to amend its answer to plead partial truth in mitigation of damages and in rejecting defendant's proposed instruction on the same subject; and 3) plaintiff's counsel was guilty of prejudicial misconduct. For reasons which shall appear, none of these contentions can be sustained. Accordingly, we affirm the judgment.

### *Punitive Damages—Malice—Quantum of Proof*

Since defendant is a mercantile agency to which the qualified privilege extends (*Roemer, supra,* p. 370; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 418 [42 Cal.Rptr. 449, 398 P.2d 785]), the judgment against it can be sustained only if the jury's finding of malice is supported by the appropriate quantum of evidence.

Before evaluating the evidence; therefore, we must first determine what standard of proof of malice is required in state private defamation actions.

Defendant, predicating its argument on the First Amendment principles enunciated in *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412], and more recently articulated in *Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323 [41 L.Ed.2d 789, 94 S.Ct. 2997], urges us to hold that the element of malice must be

---

[1]Civil Code, section 47, in pertinent part reads as follows: "A privileged publication or broadcast is one made—. . .

"3. In a communication, *without malice,* to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) *who is requested by the person interested to give the information.*" (Italics added.)

proven by clear and convincing evidence. Since the jury was instructed in the court below in terms of preponderance of evidence, defendant argues that we must reverse. We disagree with defendant's basic premise as to the standard of proof in a case such as this. Accordingly, we conclude that the jury was properly instructed.[2]

While *Gertz* does hold that a private defamation plaintiff may recover punitive damages only if he sustains the standard of proof required by *New York Times* (p. 350 [41 L.Ed.2d p. 811, 94 S.Ct. p. 3012]), the case as a whole makes it unmistakable that this rule obtains only where the protection of First Amendment freedoms is at stake. The court in *Gertz* emphatically points out that the individual's right to the protection of his own good name is a basic concept of human dignity which is at the root of any system of ordered liberty. As a consequence, the protection of private personality, like the protection of life itself, is a legitimate state interest.[3] The decision in *Gertz* that, despite this crucial state interest, the press should be held liable for libelous statements only under a more stringent standard of proof than that prescribed by state law (i.e., plaintiff must show actual loss to recover compensatory damages and must prove actual malice by clear and convincing evidence to be awarded punitive damages) is the result of balancing competing values and is predicated on a solicitous protection of the freedom of the press secured by the First Amendment. The *Gertz* court makes it clear indeed that the result reached therein is a compromise which is based on "the principle that debate on public issues should be uninhibited, robust, and wide-open" (*New York Times Co.* v. *Sullivan, supra* at pp. 270-271 [11 L.Ed.2d at pp. 700-701]), and on the premise that this standard of proof "administers an extremely powerful antidote to the inducement to media self-censorship" (*Gertz* v. *Robert Welch, Inc., supra,* 418 U.S. at p. 342 [41 L.Ed.2d at p. 807, 94 S.Ct. at p. 3008]).

---

[2]The jury was thoroughly instructed on the elements of malice. Indeed, defendant's only attack on the instructions concerns the standard of proof required.

Although we find it unnecessary to consider plaintiff's contention of invited error, we point out that defendant did submit instructions to the trial court which asserted that the preponderance of evidence was the appropriate quantum of proof.

[3]The court in *Gertz* repeatedly refers to the *New York Times* standard as being applicable to a "public person," "public officials," and "public figures," and that "a different rule should obtain with respect to [private individuals]." (94 S.Ct., at p. 3009.) The court concluded its recognition of the distinction between private individuals and public figures or officials in defamation actions by noting that: *"Thus, private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery."* (418 U.S. at p. 345 [41 L.Ed.2d at p. 808, 94 S.Ct. at p. 3010]; italics added.)

The decisive issue awaiting determination, therefore, is whether the credit report in dispute, as opposed to news media publications, is protected by the First Amendment calling for the higher standard in proving actual malice. For the reasons which follow, we hold that the libelous communication presented in a credit report falls outside the protective umbrella of the First Amendment; and, as a consequence, malice, a prerequisite to sustain punitive damages, may be proved under the conventional standard of preponderance of evidence.

*In limine,* we wish to point out that the precise question here raised has not, as yet, been definitively decided by the United States Supreme Court. On the contrary, *Rosenbloom* v. *Metromedia* (1971) 403 U.S. 29 [29 L.Ed.2d 296, 91 S.Ct. 1811] explicitly leaves this issue open. While in *Rosenbloom* the court reaffirms its commitment to bolster robust debate on public issues embodied in the First Amendment and extends constitutional protection to all discussion and communication involving matters of public or general concern, it intimates *"no view on the extent of constitutional protection, if any, for purely commercial communications made in the course of business"* (pp. 43-44, fn. 12 [29 L.Ed.2d p. 312]; italics added).

In resolving the issue, therefore, we take recourse to federal cases dealing with situations comparable with those presented in the case at bar. One of the cases in point is *Kansas Electric Supply Co.* v. *Dun & Bradstreet, Inc.* (10th Cir. 1971) 448 F.2d 647 (cert. den., 405 U.S. 1026 [31 L.Ed.2d 486, 92 S.Ct. 1289]). In *Kansas Electric* plaintiff, a wholesale electric supply company, brought an action against defendant, a credit reporting agency, for libelous statements contained in a credit report. The jury returned a verdict in favor of plaintiff, awarding it substantial sums of compensatory and punitive damages. In its appeal, defendant argued that under *New York Times Co.* v. *Sullivan, supra,* and its companion cases, the trial court should have directed a verdict in its favor because there was a total lack of " 'actual malice' " as defined by *New York Times.* In affirming both the compensatory and punitive damages, the Court of Appeals held that the doctrine of *New York Times* did not extend to private credit reports because the business and credit standing of the company was not a matter of public interest, and that the credit report under consideration provided specialized information to a selective, finite audience, and concluded that the case was properly tried and decided under Kansas state law (see to same effect: *Grove* v. *Dun & Bradstreet, Inc.* (3d Cir. 1971) 438 F.2d 433, cert. den., 404 U.S. 898 [30 L.Ed.2d 175, 92 S.Ct. 204]).

In *Hood* v. *Dun & Bradstreet, Inc.* (5th Cir. 1973) 486 F.2d 25 (cert. den., 415 U.S. 985 [39 L.Ed.2d 882, 94 S.Ct. 1580]), another case in point, plaintiff, a building contractor, instituted an action against defendant credit agency for libelous communications embraced in a credit report. In relying on *New York Times* and *Rosenbloom, supra,* defendant contended on appeal that the false credit report was constitutionally protected by the First Amendment guarantee of freedom of the press. In rejecting defendant's argument, the court held that the libelous and defamatory publications engrossed in credit reports are of a commercial nature and are unprotected by the constitutional safeguards of free speech and free press. The court recalled that the concept of purely commercial speech as an area where the First Amendment protection does not apply was originally articulated in *Valentine* v. *Chrestensen* (1942) 316 U.S. 52 [86 L.Ed. 1262, 62 S.Ct. 920]. In *Valentine,* a city ordinance banning the distribution of handbills which solicited a submarine tour was challenged as violative of First Amendment rights. The Supreme Court upheld the ordinance, declaring that commercial speech did not fall within the protective care of the First Amendment. The commercial speech doctrine was revitalized recently in *Pittsburgh Press Co.* v. *Human Rel. Comm'n* (1973) 413 U.S. 376 [37 L.Ed.2d 669, 93 S.Ct. 2553], where the court upheld an ordinance which prohibited newspapers from referring to sex in employment headings in want ads. The court distinguished *New York Times,* emphasizing that the court there was concerned with a publication which communicated information or expressed opinion, whose existence and objectives were matters of public interest and concern. The court found that the commercial advertisements did not express such social policies and as a consequence the case was governed by *Valentine* rather than by *New York Times.*

The foregoing discussion makes it quite evident that credit reports constitute a different kind of communication than news media publications. Credit reports do not contain public policies or other matters of public or general concern. The communication contained therein is purely commercial in nature. Such reports are provided upon the request of the party concerned, reach but a relatively limited readership, and in most cases are kept in strict confidence. Under these circumstances the rationale that the courts must protect such defamatory matter in order to safeguard free speech and free press obviously does not obtain.

The foregoing reasoning is dispositive of the limited issue before us, namely, the burden of proof required to sustain punitive damages for actual malice. In *New York Times* the Supreme Court made it

abundantly clear that the requirement of proving actual malice with convincing clarity is a constitutional demand flowing from the mandate of the First Amendment (pp. 285-286 [11 L.Ed.2d pp. 709-710]; see also *Rosenbloom* v. *Metromedia, supra* at pp. 50-52 [29 L.Ed.2d at pp. 315-317]). Since we have concluded that the credit report in dispute is not protected by the First Amendment, the higher standard of proof deriving from the same amendment is ipso facto eliminated and the quantum of proof required by state law remains unaffected.[4]

We are satisfied that the cases holding that "actual malice" must be proved with clear and convincing evidence (*New York Times Co.* v. *Sullivan, supra; Curtis Publishing Co.* v. *Butts* (1967) 388 U.S. 130 [18 L.Ed.2d 1094, 87 S.Ct. 1975]; *Beckley Newspapers* v. *Hanks* (1967) 389 U.S. 81 [19 L.Ed.2d 248, 88 S.Ct. 197]; *Rosenbloom* v. *Metromedia, supra; Gertz* v. *Robert Welch, Inc., supra; Field Research Corp.* v. *Patrick* (1973) 30 Cal.App.3d 603 [106 Cal.Rptr. 473]) are distinguishable from the case at bench. Each of the cited cases deals with libelous matters published by a segment of the news media and, therefore, qualifies for the protection of the First Amendment.

We are aware that in *Field Research Corp.* v. *Patrick, supra* at page 608, the court intimated without qualification that in libel actions juries must be instructed that proof of " 'actual malice' " must be by " *'clear and convincing evidence.'* " It is apparent, however, that *Field Research* covered an entirely different factual situation. Defendant Patrick was a candidate for Governor of California, a public figure, and the libelous statements were communicated by several news media throughout California. Thus, under the United States Supreme Court cases cited above, the libelous matters enjoyed the constitutional protection afforded by the First Amendment. We believe that, despite the overbroad language applied in *Field Research,* the degree of proof requirement laid down therein must be read within the factual context of that case.

Finally, we note that although our decision rests upon the holding that the credit report in question is not protected by the First Amendment, and in consequence the punitive damages may be proved by the conventional preponderance of evidence, we are persuaded by our

---

[4]This is entirely consistent with the guidance expressed in *Gertz,* "that the States should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood *injurious to the reputation of a private individual.*" (*Gertz* v. *Robert Welch, Inc., supra,* 418 U.S. at pp. 345-346 [41 L.Ed.2d at p. 809, 94 S.Ct. at p. 3010]; italics added.)

independent review of the record—hereafter summarized—that the judgment is supported by evidence of "actual malice" and that the concomitant punitive damages were proven under the higher standard of "clear and convincing evidence," as well.

## The Evidence

The evidence was generally undisputed. As noted earlier, defendant stipulated to the falsity of the publications, but denied that the inferences to be drawn from the evidence supported a finding of malice. The malice necessary to defeat a qualified privilege is "actual malice" which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights (*MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 552 [343 P.2d 36]; *Field Research Corp.* v. *Patrick, supra,* 30 Cal.App.3d 603, 606).

We agree with defendant that the record is devoid of evidence that Retail Credit Company bore deliberate ill will towards plaintiff. However, the evidence clearly and convincingly supports the inference that defendant lacked reasonable grounds for believing in the truth of the publications and that defendant acted in reckless disregard of plaintiff's rights. Thus, defendant does not contest the fact that Mr. Kett, admittedly biased against Mr. Roemer, was the primary source of the information contained in the defamatory reports. Defendant also admits knowing at the time the defamatory reports were prepared that plaintiff had enjoyed for many years an excellent business and social reputation. Defendant concedes that it knew at the time of publication that its own rules required derogatory information contained in its reports to be confirmed by independent sources and, if no confirmation was available, that a detailed explanation be included in the report to indicate that the information was obtained from but a single source.

Defendant claims, however, that it was impossible to confirm such information, a conclusion that the jury could reasonably disregard since the information from Mr. Kett strongly implied that plaintiff was dishonest, while defendant had in its own files prior reports indicating that Mr. Roemer had an excellent reputation. Defendant admitted adding no explanation that the information was obtained from one source, claiming that the reports made that fact implicitly clear. However, defendant also admitted that in some portions the reports

stated that the derogatory information was obtained from "sources" when in fact Mr. Kett was the sole source.

In short, it cannot be said that the jury was unreasonable in drawing the inference that defendant had no reasonable cause to believe the truth of its publications about Roemer and therefore acted in reckless disregard of plaintiff's rights. The trial court's finding of malice is supported by clear and convincing evidence.

### Punitive Damages

■ Defendant contends that the award of $250,000 punitive damages was grossly excessive as a matter of law. ■ It is a well-settled rule that after an exemplary damage award has been approved by the trial court with the denial of a motion for new trial, as in this case, the reviewing court will declare the amount excessive only if, upon a review of the entire record, the award must be said to be so grossly excessive as to indicate passion or prejudice on the part of the jury (*Di Giorgio Fruit Corp.* v. *AFL-CIO* (1963) 215 Cal.App.2d 560, 581 [30 Cal.Rptr. 350]; *Cunningham* v. *Simpson* (1969) 1 Cal.3d 301, 308-309 [81 Cal.Rptr. 855, 461 P.2d 39]; *Wetherbee* v. *United Ins. Co. of America* (1971) 18 Cal.App.3d 266, 272 [95 Cal.Rptr. 678]; *Finney* v. *Lockhart* (1950) 35 Cal.2d 161, 164 [217 P.2d 19]; *Ferraro* v. *Pacific Fin. Corp.* (1970) 8 Cal.App.3d 339, 351 [87 Cal.Rptr. 226]; *Washer* v. *Bank of America* (1948) 87 Cal.App.2d 501, 510 [197 P.2d 202]; *Rosenberg* v. *J.C. Penney Co.* (1939) 30 Cal.App.2d 609, 628 [86 P.2d 696]).

■ As this court stated in *Wetherbee* v. *United Ins. Co. of America, supra,* at pages 270-271: "The object of exemplary damages is to make the example as well as the punishment fit the offense (*Thomson* v. *Catalina,* 205 Cal. 402, 405-406 [271 P. 198, 62 A.L.R. 235]), and in determining the amount necessary to impose the appropriate punitive effect, the jury was entitled to consider the wealth of the defendant (*MacDonald* v. *Joslyn,* 275 Cal.App.2d 282, 293 [79 Cal.Rptr. 707])." ■ According to the evidence, Retail Credit Company has a net worth of about $40 million and an after-tax income of nearly $9 million a year. Using the "standard" enunciated in *Wetherbee, supra,* the $250,000 award represents about 10 days' after-tax income of the defendant.[5]

---

[5]As recently observed by our Supreme Court: "It follows that the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective. [Citations.]" (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 65 [118 Cal.Rptr. 184, 529 P.2d 608].)

Defendant attempts to distinguish *Wetherbee* on the grounds that it was a case of much more deplorable conduct on the part of the defendant and that there was "no such combination of judicial error and attorney misconduct as is found in the case at issue." As we explain in this opinion, however, there was neither judicial error nor attorney misconduct in the case at bench during trial.

Defendant claims that its conduct was merely negligent and, hence, completely distinguishable from the "calculated fraud" of the insurance company in the *Wetherbee* case. However, two juries, in awarding plaintiff large money damages against defendant, and the trial judge, in denying defendant's motion for a new trial, found defendant's conduct to be malicious.

Defendant's conduct evidenced a grossly reckless disregard of plaintiff's rights. The jury found plaintiff to have suffered $40,000 actual damages as a result of defendant's actions. In light of all the evidence in this case, including the net worth of defendant, it cannot be said that the award of $250,000 punitive damages is so grossly excessive as to indicate passion or prejudice on the part of the jury.

### Denial of Leave to Amend

At the close of defendant's case and prior to the giving of instructions to the jury, defendant requested leave to amend its answer to plead partial truth of the defamatory statements in mitigation of damages. This request was denied as was defendant's proposed instruction on the subject of circumstances in mitigation of damages. Defendant asserts that the coupled effect of these two refusals constituted prejudicial error. We disagree.

Section 461 of the Code of Civil Procedure provides that the defendant in a libel action "may, in his answer, allege both the truth of the matter charged as defamatory, and any mitigating circumstances, to reduce the amount of damages. Whether he proves the justification or not, he may give in evidence the mitigating circumstances." Defendant contends that a reading of this statute in light of the liberal California rule allowing amendment of pleadings to conform to proof (Code Civ. Proc., § 473; *20th Cent. Cigarette Vendors* v. *Shaheen* (1966) 241 Cal.App.2d 391, 396 [50 Cal.Rptr. 773]; *Reynolds* v. *Mead* (1944) 62 Cal.App.2d 179, 180-181 [144 P.2d 424]) requires the conclusion that the trial judge should have allowed leave to amend.

■ Although failure to permit such amendment where justice requires it is an abuse of discretion (*Vick* v. *Grasser* (1959) 169 Cal.App.2d 692, 701 [338 P.2d 223]; *Fairfield* v. *Hamilton* (1962) 206 Cal.App.2d 594, 602 [24 Cal.Rptr. 73]; *Farmers' Nat. Gold Bank* v. *Stover* (1882) 60 Cal. 387, 390), the objectionable subject matter of the amendment, the conduct of the moving party, or the belated presentation of the amendment are appropriate matters for the reviewing court to consider in evaluating the trial court's exercise of discretion (3 Witkin, Cal. Procedure (2d ed.) § 1042, p. 2621; *Dos Pueblos Ranch & Imp. Co.* v. *Ellis* (1937) 8 Cal.2d 617, 622 [67 P.2d 340]; *Ross* v. *McDougal* (1939) 31 Cal.App.2d 114, 121 [87 P.2d 709]). And, as a matter of policy "The discretion of the trial court should be upheld unless clearly abused" (3 Witkin, Cal. Procedure (2d ed.) § 1040, p. 2619).

■ At the beginning of the first trial Retail Credit specifically stipulated that the publications were false and claimed only that they were made without malice. Over three years later, at the second trial, defendant again stipulated to the falsity of the reports without any qualifications as to particular statements in the reports. Assuming arguendo that defendant did not know at the start of the first trial what the evidence would show, the conclusion is inescapable that it knew at the start of the second trial what the evidence would be and, more specifically, which of the statements in the reports were true and which were not.

■ It is a general rule that an amendment which contradicts an admission in the original pleading will ordinarily not be allowed unless a showing is made of mistake or other excuse for changing the allegations of fact (3 Witkin, Cal. Procedure (2d ed.) § 1045, pp. 2622-2623; *Security First Nat. Bank* v. *Rospaw* (1951) 107 Cal.App.2d 220, 224 [237 P.2d 76]; *Tognazzi* v. *Wilhelm* (1936) 6 Cal.2d 123, 127 [56 P.2d 1227]; *Findley* v. *Garrett* (1952) 109 Cal.App.2d 166, 179 [240 P.2d 421]; *Bank of Woodland* v. *Heron* (1898) 122 Cal. 107, 109 [54 P. 537]).

Although these cases are not squarely on point since defendant Retail Credit did not specifically admit the falsity of the publications in the answer itself, they offer analogous reasons for denying a request to amend an answer to contradict a stipulation on which the case has been tried.

■ The law is also clear that even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a

valid reason for denial. The cases indicate that the denial may rest upon the element of lack of diligence in offering the amendment after knowledge of the facts, or the effect of the delay on the adverse party (3 Witkin, Cal. Procedure (2d ed.) § 1048, p. 2623; *Bank of America etc. Assn.* v. *Goldstein* (1938) 25 Cal.App.2d 37, 47 [76 P.2d 545]; *Dos Pueblos Ranch & Imp. Co.* v. *Ellis, supra; Moss Estate Co.* v. *Adler* (1953) 41 Cal.2d 581, 585 [261 P.2d 732]; *Nelson* v. *Specialty Records, Inc.* (1970) 11 Cal.App.3d 126, 139 [89 Cal.Rptr. 540]).

 Defendant claims that the evidence introduced at the second trial made it clear that some of the statements in the reports were true, so that an amendment to plead partial truth should have been allowed. But the evidence introduced *at the first trial* also indicated the truth of some of the statements in the reports—e.g., that Messrs. Roemer and Kett had been engaged in a business dispute, that certain legal actions had been filed between them, and that obscenities had been painted on the wall of plaintiff's former office. Such a long delay in offering the amendment after knowledge of the facts could very reasonably be construed by the court to constitute a lack of due diligence, a finding which is implicit in the trial judge's observation that it would be improper to permit the proposed amendment after the entire case had been tried on the basis of the stipulation of falsity.

 Defendant also contends that it was error to refuse his proposed instruction number 20 on the subject of circumstances in mitigation of damages. The proposed instruction charged that "even though the defendant may not have alleged truth as a defense, the jury may still consider what has been offered to prove truth as grounds for mitigating damages."

"The 'mitigating circumstances' which section 461 of the Code of Civil Procedure allows the defendant to prove in a situation such as this are those which tend to show that the defendant in speaking the slanderous words acted in good faith, with honesty of purpose, and not maliciously" (*Clay* v. *Lagiss* (1956) 143 Cal.App.2d 441, 448 [299 P.2d 1025]). The propriety of denying defendant's instruction depends, then, on whether the fact that plaintiff had been engaged in a business dispute and the fact that the wall of plaintiff's former office had been defaced are "other mitigating circumstances" tending to show that defendant acted in good faith in publishing the defamatory statements.

Defendant claims that these facts show that its employees acted honestly and without malice in publishing the reports, and, therefore, the jury should have been instructed to consider those circumstances in mitigation of damages. On the contrary, the fact that Roemer had been engaged in a prolonged business dispute with Kett, the sole source of the defamatory information, indicates that it was unreasonable for defendant to rely on anything Kett reported about Roemer without obtaining independent confirmation. The existence of wall defacement in plaintiff's office does not, in and of itself, establish that plaintiff did the defacing.

Furthermore, we agree with plaintiff that defendant's attempt at the end of the second trial to inject the issue of partial truth via an amendment to its answer and a jury instruction was merely an attempt "to submit its case to the jury on one theory after having tried it on another. . . ." We conclude that the trial judge did not err in denying defendant's request for leave to amend nor in refusing its proposed jury instruction.

### Misconduct of Counsel

Defendant for the first time on appeal accuses plaintiff's counsel of misconduct in his closing argument. Defendant also seems to assert that the trial court had a *sua sponte* duty to admonish counsel and to instruct the jury accordingly. We find no merit in these contentions.

A long established principle of appellate review calls for raising the claimed error in the trial court. This is particularly true with respect to assignments of attorney misconduct. The usual procedure requires the "assignment" of counsel's statement as misconduct and a request that the jury be instructed to disregard it. If this is not done, the error is waived unless the misconduct was of so aggravated a character that it could not be cured by any instruction (4 Witkin, Cal. Procedure (2d ed.) § 163, p. 2983; *Horn* v. *Atchison T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561]; *Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311, 318 [74 Cal.Rptr. 534, 449 P.2d 750]; *Tingley* v. *Times Mirror* (1907) 151 Cal. 1, 23 [89 P. 1097]).

In the case at bench, the general thrust of plaintiff's closing argument was that defendant is a large, snooping monopoly which makes huge profits by specializing in destroying people's reputations. Several refer-

ences to congressional investigations of companies like Retail Credit helped add credibility to such characterizations.

Defense counsel objected only twice to the remarks of plaintiff's counsel, and in neither objection did he specifically assign misconduct or request an admonition to the jury. We consider the Supreme Court's statement in *Horn* v. *Atchison T. & S. F. Ry. Co., supra* at page 611, as appropriate in dismissing defendant's contention: "In the instant case we do not deem [plaintiff's counsel's] misconduct to be of such a character that it could not have been obviated by timely objections and instructions. Defense counsel, by his passive silence, undoubtedly encouraged the repetition of arguments which he now characterizes as so prejudicial that we should overlook his failure to object. He concedes that individual improprieties do not constitute grounds for reversal, but that the cumulative effect thereof requires this result. In such circumstances an attack on the instances of misconduct at the onset, together with proper instructions from the court to both the jury and counsel, would not only have removed the effect of the initial improprieties but would also have forestalled the commission of subsequent acts of misconduct. As this is the very reason for the rule requiring timely objections as a prerequisite to the assignment of misconduct on appeal, defendant cannot prevail in its assignment of the instant misconduct."

Having reviewed the entire record, we are of the opinion that the argument of plaintiff's counsel was entirely within the bounds of legitimate advocacy. This is a much more plausible explanation for the absence of any assignment of misconduct than the contention urged for the first time on appeal that such an assignment would have been futile.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied February 28, 1975, and appellant's petition for a hearing by the Supreme Court was denied March 26, 1975.