Filed 10/16/23  Lin v. State of Cal. ex. rel. Dept. of Transportation CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

LIN LIN et al.,

    Plaintiffs and Appellants,

v.

STATE OF CALIFORNIA ex rel. DEPARTMENT OF TRANSPORTATION,

    Defendant and Respondent.

2d Civ. No. B322677
(Super. Ct. No. 21CV00216)
(Santa Barbara County)

Plaintiffs Lin Lin and Levi Liu appeal the granting of a summary judgment motion filed by defendant State of California ex rel. Department of Transportation (Caltrans) on the plaintiffs' action for damages alleging a dangerous condition on a state highway.  We conclude, among other things, that: 1) the trial court properly limited the issues for summary judgment to the facts pled in the first amended complaint; 2) the court did not abuse its discretion by denying plaintiffs' request to file a second amended pleading; 3) Caltrans proved that it has design

immunity; 4) the burden shifted to plaintiffs to show the loss of design immunity, and 4) plaintiffs did not meet their burden. We affirm.

FACTS

Lin Lin and Levi Liu (collectively Lin) are the surviving heirs of decedent Michael Liu. Michael Liu died during a traffic collision on June 5, 2020, on State Highway 154 (highway 154). In the first amended complaint, Lin alleged defendant Oscar Pereyra was headed southbound on highway 154. Pereyra approached a curve, lost control of his vehicle, crossed over the center of the roadway, collided with the driver's side of Michael Liu's vehicle, killing him. He crossed over two sets of double yellow lines and he was charged with vehicular manslaughter. Lin alleged Caltrans was negligent by designing the roadway in a dangerous condition by failing to construct a physical center concrete barrier at the location of the accident to prevent center line crossover accidents.

During the five-year period prior to the accident, 25 million vehicles travelled within a one-mile area that included the accident site, and there were four similar cross centerline collisions. Caltrans's expert Nevin Q. Sams determined the accident rate for that period for similar median crossover accidents was 0.000016 percent.

In a traffic collision report, the California Highway Patrol (CHP) determined that the sole cause of the accident was Pereyra driving while intoxicated. The CHP said, "Had Mr. Pereyra not been driving his vehicle while under the influence, the collision would not have occurred."

Caltrans filed a motion for summary judgment claiming it had design immunity from liability. The trial court granted

2.

summary judgment. It found Caltrans met its burden to show it had design immunity. The burden shifted to Lin to show Caltrans lost its immunity, but Lin did not meet that burden.

## DISCUSSION

### *Summary Judgment*

"Summary judgment provides courts with 'a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' " (*San Jose Neurospine v. Aetna Health of California, Inc.* (2020) 45 Cal.App.5th 953, 957.) "A defendant may obtain summary judgment by showing one or more elements of plaintiff's cause of action is missing or that there is a complete defense to the cause of action." (*Ibid.*) On appeal from a summary judgment, we make a de novo review of the correctness of the trial court's ruling to decide whether there are any triable issues of fact. (*Id.* at p. 958.) We also consider whether the trial court erred on issues of law in making its decision on summary judgment.

### *The Trial Court's Decision to Limit the Issues*

Lin contends the trial court erred by deciding to limit the issues for summary judgment to the facts pled in the first amended complaint.

In the first amended complaint, Lin alleged Caltrans was negligent and created a dangerous condition by not constructing a "physical barrier" to separate the traffic lanes. But later in opposition to the summary judgment motion, Lin raised additional claims of negligence, including: 1) there was a lack of warning signs; 2) there was reduced pavement friction; 3) the pavement was excessively slippery when wet; and 4) Caltrans did not attempt to provide warning signs until after the accident.

The trial court did not err in limiting the issues for summary judgment to the facts pled in the first amended complaint. " 'The pleadings delimit the issues to be considered on a motion for summary judgment.' " (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.) "Thus, a 'defendant moving for summary judgment need address only the issues raised by the complaint; *the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.*' " (*Ibid.*, italics added; *Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98, fn. 4; *Mars v. Wedbush Morgan Securities, Inc.* (1991) 231 Cal.App.3d 1608, 1614 [summary judgment "opposing papers may not create issues outside of the pleadings"].) Consequently, the court properly focused on Caltrans's liability for failing to build a physical concrete barrier between traffic lanes.

*Denying Lin's Request to File a Second Amended Complaint*

The trial court filed its tentative decision granting summary judgment to Caltrans. At the hearing on July 27, 2022, Lin's counsel said, "[T]o the extent the Court is inclined to stick with the tentative ruling in respect to the scope of the pleadings, the Plaintiffs today are here to request leave from the Court to file a second amended complaint . . . ." The court denied the request. It said the request was "too late."

A trial court's decision denying leave to amend is reviewed for abuse of discretion. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612.) It is Lin's burden to make a sufficient showing on appeal to show an abuse of discretion. (*Ibid.*) "[A]s a matter of policy '[t]he discretion of the trial court should be upheld unless clearly abused.' " (*Roemer v. Retail Credit Co.* (1975) 44 Cal.App.3d 926, 939.)

4.

Lin cites *Laabs v. City of Victorville, supra*, 163 Cal.App.4th at page 1257, where the court said, "[I]f a plaintiff wishes to introduce issues not encompassed in the original pleadings, the plaintiff must seek leave to amend the complaint *at* or prior to the hearing on the motion for summary judgment." (Italics added.) Lin claims her request was timely. She also cites *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1067, where the court ruled a request to amend should have been granted. But these cases are distinguishable. The brief dicta in *Laabs* merely mention the options a plaintiff may attempt to use. The dicta do not discuss, address, or in any way limit the trial court's *well established* discretion to deny a motion to amend. (*Roemer v. Retail Credit Co., supra*, 44 Cal.App.3d at p. 939.)

In *Kirby*, the plaintiff filed an "imperfectly pleaded" complaint. (*Kirby v. Albert D. Seeno Construction Co., supra*, 11 Cal.App.4th at p. 1067.) Here, by contrast, Lin was seeking to add issues that were "not pleaded." (See *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 176.) Cases such as the current one do not fall within the *Kirby* exception that involved a summary judgment motion that was tantamount to a motion for judgment on the pleadings. The request to amend here involves issues of delay, fairness to the defendant, compliance with the California Rules of Court, and the adequacy of the record on appeal.

Trial courts properly deny requests to amend complaints where the requests are untimely or unreasonably delayed. (*Dos Pueblos Ranch & Improvement Co. v. Ellis* (1937) 8 Cal.2d 617, 622; *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280; *Atkinson v Elk Corp.* (2003) 109 Cal.App.4th 739,

759; *Roemer v. Retail Credit Co.*, *supra*, 44 Cal.App.3d at p. 940.) "[E]ven if a good amendment is proposed in proper form, *unwarranted delay in presenting it may–of itself–be a valid reason for denial.*" (*Roemer*, at p. 940, italics added.)

Here the trial court did not abuse its discretion by denying Lin's request to file a second amended complaint to add additional negligence grounds against Caltrans at this late stage of the proceedings. It could reasonably consider such factors as the history of this case, the stage of the case when the request to amend was made, Lin's earlier opportunity to file a first amended complaint, when the new grounds should have been known to Lin, and the failure of Lin to allege those new grounds when she filed her first amended complaint. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 613.)

The trial court said it had "afforded plaintiffs the opportunity *to amend their original complaint* to state all conditions they allege constitute a dangerous condition of the subject roadway." (Italics added.) "Availing themselves of that opportunity, plaintiffs filed the [first amended complaint]." The court found the new grounds should have been raised earlier in the first amended complaint and there was an unreasonable delay in seeking to file the second amended complaint at a late stage of the proceedings. It said, "There is nothing to suggest plaintiffs *could not have identified* additional facts constituting dangerous conditions, such as a lack of adequate warning signs, reduced pavement friction, longitudinal grade, or superelevation of the roadway, when they filed their [first amended complaint], *considering that the Court raised questions regarding the nature of the dangerous condition in its Minute Order*." (Italics added.)

Lin has not made a sufficient showing to challenge the trial court's *fact findings* on these issues.

In that May 18, 2021, minute order, the trial court sustained a demurrer to the original complaint and stated it needed "much more detail describing the alleged dangerous condition." Caltrans claims the court's findings of unreasonable delay are supported because: 1) Caltrans produced discovery in May 2021, "which included documents related to wet weather accident history, signage on the roadway, and recommendations based of the State's internal traffic investigation reports," *before* Lin filed the first amended complaint; and 2) Lin's request to file a second amended complaint on July 27, 2022, "came *more than 13 months* after [Lin] received the pertinent data, and approximately *three* months after" Caltrans filed the summary judgment motion. (Italics added.) Lin did not raise her new factual theories in her discovery responses. Caltrans relied on those responses, and it claims Lin's failure to change her discovery answers to notify it that she was changing her theories was prejudicial.

The trial court may properly consider prejudice to the defendant in denying a plaintiff's request to amend. (*Melican v. Regents of University of California, supra*, 151 Cal.App.4th at p. 176.) Caltrans has a strong claim of prejudice. "Prejudice can include the time and expense associated with opposing a legal theory that a plaintiff belatedly seeks to change." (*Payton v. CSI Electrical Contractors, Inc.* (2018) 27 Cal.App.5th 832, 849.)

Granting the late request to amend would also essentially authorize a different new lawsuit against Caltrans *after* Caltrans *had prevailed* on its motion for summary judgment. In *Melican*, the appellate court affirmed the trial court's denial of plaintiffs'

7.

request to amend the complaint at a summary judgment hearing. The court said, "It would be patently unfair to allow plaintiffs to defeat [University of California's] summary judgment motion by allowing them to present a 'moving target' unbounded by the pleadings." (*Melican v. Regents of University of California*, *supra*, 151 Cal.App.4th at p. 176.)

"Thus, when a plaintiff seeks leave to amend his or her complaint only after the defendant has mounted a summary judgment motion directed at the allegations of the unamended complaint, even though the plaintiff has been aware of the facts upon which the amendment is based, '[i]t would be *patently unfair* to allow plaintiffs to defeat [the] summary judgment motion . . . .'" (*Falcon v. Long Beach Genetics, Inc.*, *supra*, 224 Cal.App.4th at p. 1280, italics added.)

Lin's counsel claim they prepared a motion to amend. But they did not file it with the court and it is not part of the record on appeal. Consequently, the record does not show grounds to amend, excusable delay, or compliance with California Rules of Court, rule 3.1324. Moreover, we cannot determine the adequacy of a proposed amended pleading when it is not part of the record. In Lin's reply brief, her counsel disagreed with Caltrans's position that there was an unreasonable delay in seeking an amendment. But, unlike Caltrans, they have not cited to the record. They also made no factual showing of good cause for delay in the trial court.

Lin's counsel's *brief oral request* to amend, which was *only made after* the trial court issued its tentative ruling to grant summary judgment, was untimely, insufficient (Cal. Rules of Court, rule 3.1324) and properly denied. (*Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218 [trial court

8.

properly denied plaintiff's oral request to amend the complaint that was first raised at the summary judgment hearing]; *Miles v. City of Los Angeles* (2020) 56 Cal.App.5th 728, 739 [denying request to amend made after the court indicated its intention to grant summary judgment was proper]; *Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1265, italics added [request to amend the complaint is untimely where the plaintiff did not seek "leave to amend his complaint *before the hearing*" on the summary judgment motion].)

### *Design Immunity*

In certain cases Caltrans's failure to erect median barriers to prevent crossover accidents may result in civil liability. (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 68-69.)  But in those cases, Caltrans "may escape such liability by raising the affirmative defense of 'design immunity.' " (*Id.* at p. 69.)

Caltrans proved that it had design immunity for the portion of the highway where the accident took place.

"[A] public entity may avoid liability for a dangerous condition of property if it can establish that the injury was caused by an approved plan or design." (*Laabs v. City of Victorville, supra,* 163 Cal.App.4th at p. 1262.)  "To establish the immunity, the entity must establish: ' " '(1) [a] causal relationship between the plan and the accident; (2) discretionary approval of the plan prior to construction; [and] (3) substantial evidence supporting the reasonableness of the design.' " ' " (*Ibid.*)

Dangerous condition "liability is imposed" on the public entity "*only* when there is *some defect* in the property itself and a causal connection is established between the defect and the injury." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112,

1135, italics added.)  At the time of the accident, the road was wet with a "light mist," but the CHP officer who came to the scene could see the entire roadway in both directions.  There is a curve near the accident scene.  But it is not a sharp curve.  It is a "moderate curve" as "you proceed west bound."  Caltrans presented evidence showing that there was no defect in the highway and the highway was safe.  It identified the issue as a highway design based on an approved plan that did not include a concrete barrier between traffic lines.

Caltrans's expert Sams, a registered civil engineer, said the "[a]ccident [s]ite" had "[f]our 12-foot-wide travel lanes; 6-7 foot wide median defined by double yellow sold stripes with a 12" wide rumble strip running down the center; 3-4-foot-wide right side paved shoulders.  The pavement and delineation were in good condition."  In 1962, the state engineers approved the original plans for the widening of highway 154.  The engineers had discretionary authority to approve those plans.

In 2010, a second plan modified the area of the accident site with the addition of a "rumble strip."  This strip is to "alert errant drivers with tactile and auditory notification when they start to drift into the opposing lanes."  The plans for this modification were approved by a licensed Caltrans engineer who had "discretionary authority" to approve the design.  In 2011, Caltrans executed this approved plan by overlaying asphalt in the area in the vicinity of the accident site to improve the friction characteristics of the road surface.

Sams said the median with a rumble strip created a "soft barrier" which was appropriate and reasonable for the four-lane segment of the highway that included the accident site.  A concrete barrier was not legally required as part of the design

plan. The absence of such a barrier in the design was reasonable. Sams said studies have shown that installing concrete median barriers results "in an increase in median accidents" as "the barrier is a fixed object and can cause serious injury either by direct impact or vehicles deflecting back into traffic." There were other reasons why a concrete median barrier was not reasonable. There was no "pattern or concentration of cross median collisions" in the subject area; a barrier would involve environmental issues, was not feasible, and would involve excessive costs.

Lin claims the 1962 plans did not consider a concrete median barrier. But Sams's declaration shows the state engineers decided not to "include a concrete barrier *anywhere on the project* to separate the eastbound and westbound travel lanes." (Italics added.) Sams said in 2010 Caltrans considered the issue of a barrier in its approved plans for that project and decided that a rumble strip was appropriate and a concrete barrier was not. He was not involved with the original approval process, but he may present evidence as an expert regarding that process. (*Gonzales v. City of Atwater* (2016) 6 Cal.App.5th 929, 947.) He showed Caltrans's design decisions fell within its design immunity. (*Laabs v. City of Victorville, supra,* 163 Cal.App.4th at pp. 1263-1264.)

Lin relied on her expert Dale Dunlap who opined that a rumble strip barrier is ineffective and constituted an unreasonable design decision because only a concrete median barrier would suffice. Caltrans properly objected that Dunlap made a conclusion without stating sufficient supporting facts. An opinion without citing studies, scientific evidence, or relevant foundational facts is not admissible. (*People v. Wright* (2016) 4 Cal.App.5th 537, 545-546; *Grenier v. City of Irwindale* (1997) 57

11.

Cal.App.4th 931, 941 [a plaintiff's expert's mere "differing opinion" does not undermine the public entity's substantial evidence showing a reasonable design].)  Moreover, Dunlap's declaration is based on issues that *were not raised in the first amended pleading*, and his opinions based on such issues cannot be considered to challenge the summary judgment.  (*Laabs v. City of Victorville*, *supra*, 163 Cal.App.4th at p. 1253.)  Consequently, his declaration, in large part, is not relevant for this appeal.  (*Ibid*.)

Dunlap also did not show Caltrans lacked a reasonable justification to be concerned about constructing a concrete barrier.  Studies show such barriers " 'usually result in an *overall increase in accidents and injuries.*' "  (*Wyckoff v. State of California* (2001) 90 Cal.App.4th 45, 56, italics added.)  Courts have held that decisions not to install median barriers were reasonable because such barriers reduce the "lane width" of highways and streets, which causes more accidents.  (See, e.g., *Sutton v. Golden Gate Bridge, Highway & Transportation Dist*. (1998) 68 Cal.App.4th 1149, 1160.)  Rumble strips are now a commonly used highway device to alert drivers who inadvertently veer into another lane with a loud noise and vibration warning.  (See, e.g., *Rodriguez v. Department of Transportation* (2018) 21 Cal.App.5th 947, 951.)  "That a paid expert witness for plaintiff, in hindsight, found that the design was defective, does not mean, ipso facto, that the design was unreasonably approved."  (*Ramirez v. City of Redondo Beach* (1987) 192 Cal.App.3d 515, 525.)  " ' "[A]s long as reasonable minds can differ concerning whether a design should have been approved, then the governmental entity must be granted immunity." ' "  (*Sutton*, at p. 1158.)

*Lin's Burden to Show a Loss of Immunity*

Because Caltrans proved design immunity, the burden shifts to Lin to show Caltrans lost that immunity. (*Laabs v. City of Victorville, supra,* 163 Cal.App.4th at p. 1268.) Loss of design immunity may be shown by changes in conditions that make the area dangerous or by traffic statistical evidence. (*Id.* at pp. 1268-1269.) Lin had to show: 1) the design became dangerous because of changed physical conditions, 2) Caltrans had actual or constructive knowledge of these changes, and 3) Caltrans had a reasonable time to make corrections. (*Id.* at p. 1268.)

Sams determined the subject portion of the highway was safe and he relied on accident rate statistics. Lin objected to the facts Sams relied on to calculate accident rate statistics. The trial court found those facts were accurate and overruled Lin's objections. From our de novo review, we conclude the trial court was correct and Lin's objections were properly overruled. Lin claimed Sams used statistics for accidents involving cars that crossed over a center median. She argues he should have used statistics for all accidents regardless of type and he could not properly determine the cause of accidents by reviewing accident rate statistics.

But Sams relied on accident incident reports that had detailed descriptions of each accident. From these incident reports, he carefully distinguished between crossover median accidents and other types of accidents. He properly identified and relied on accidents that were factually similar to the accident in this case. (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1072; *Wyckoff v. State of California* (2001) 90 Cal.App.4th 45, 60-62.) Lin claimed all accidents had to be included regardless of type. But that would lead to a less

13.

accurate and a statistically disproportionate result.  (*Salas*, at p. 1072.)  Lin alleged Caltrans was negligent for not building a concrete center median divider.  That made crossover accidents the most relevant for Lin's claim of negligence.  (*Ibid*.)

Lin notes that Dunlap determined there was a higher accident rate than Sams's, and she claims the trial court should not have rejected his conclusions.  But Dunlap opined Caltrans provided misleading information without stating facts to support that claim.  He suggested Sams should not have used statistics for a five-year period before this accident.  But accident statistics for that five-year period provide the proper method for determining the accident rate.  (*Mirzada v. Department of Transportation* (2003) 111 Cal.App.4th 802, 809; *Wyckoff v. State of California, supra*, 90 Cal.App.4th at p. 61.)  Moreover, Dunlap did not show the facts Caltrans used to support its five-year statistics or its mathematical calculations were incorrect.  Dunlap's data was overinclusive.  He used all accidents, regardless of type, instead of the substantially similar accident standard.  (*Salas v. Department of Transportation, supra*, 198 Cal.App.4th at p. 1072.)

Sams provided *detailed information* regarding *each accident* he considered, including its date, the type of accident, whether it was a median crossover, the precise location, and the weather conditions.  He thus provided the foundational facts for his assessment.  Dunlap did not.  Caltrans properly objected to Dunlap's conclusions because they were not supported by reliable foundational facts (*People v. Wright, supra*, 4 Cal.App.5th at pp. 545-546), and his statistics were "intentionally vague" without any effort to provide the number of median crossover accidents. (*Mirzada v. Department of Transportation, supra*, 111

Cal.App.4th at p. 809.)  Moreover, Dunlap's statistics were insufficient to support a triable issue of fact because, unlike Sams's showing, Dunlap failed to provide "information" regarding "the factual circumstances surrounding these accidents."  (*Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, 1187.)

Sams determined that for the five-year period prior to the date of this accident there were four substantially similar accidents near this section of highway and that 25 million cars had passed by this area.  That results in an accident rate of 0.000016 percent.  That is a traffic accident rate supporting his determination that this portion of roadway was safe.  (*Mirzada v. Department of Transportation*, *supra*, 111 Cal.App.4th at p. 804; *Wyckoff v. State of California*, *supra,* 90 Cal.App.4th at pp. 60-62; *Callahan v. City & County of San Francisco* (1971) 15 Cal.App.3d 374, 379 ["The paucity of accidents occurring during this time clearly indicates that the intersection was safe"]; see also *Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 599-600, overruled on another ground in *Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 659, fn. 4.)

The conduct of the driver who caused the accident is relevant in deciding whether Caltrans is liable.  (*Callahan v. City & County of San Francisco*, *supra*, 15 Cal.App.3d at p. 379.)  Caltrans is not liable for a driver's *dangerous* conduct that causes an accident on a highway that is safe.  (*Ibid*.)  Lin claims Pereyra was driving properly and with "due care."  But her effort to minimize his conduct in order to place liability on Caltrans is impeached by a judicial admission she made in her pleading.  (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1211 [a party in summary judgment may rely on admissions in their opponent's pleadings].)  In the first amended complaint, Lin

said Pereyra "operated his vehicle *dangerously*, *at too high a speed* for the conditions, and lost control of it completely–immediately killing Decedent." (Italics added.) Moreover, the CHP traffic collision report concluded, "[H]ad Mr. Pereyra not been driving his vehicle *while under the influence, this collision would not have occurred.*" (Italics added.)

A loss of design immunity may be shown where the public entity is on notice that under "actual operation" there is an increased traffic flow that makes the design no longer safe. (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 70-71.) But Lin made no showing that there had been any substantial increase in the rate of traffic on highway 154 over a 10-year period. She consequently did not show Caltrans was on notice that this portion of the highway had become more dangerous due to increased traffic flow. (*Laabs v. City of Victorville*, *supra*, 163 Cal.App.4th at p. 1269.) Dunlap *admitted* the "traffic experienced by [highway 154] *has been generally consistent*" for the time period of 2010 to 2020. (Italics added.)

Lin claimed other factors put Caltrans on notice that it had to make corrections. Dunlap said that over a 10-year period there were 25 accidents in the *general area* near where this accident took place and 19 occurred during wet weather. Lin suggests Dunlap showed an increasing trend of wet weather cross-median accidents at the accident site. But Dunlap did not state facts to support such a claim. He did not state the date of the accidents, the type, whether *they were median crossover accidents*, the *precise location* of these accidents, or whether they occurred at the accident site. (*Mirzada v, Department of Transportation, supra*, 111 Cal.App.4th at p. 809.)

By contrast, Sams's facts were so detailed he could identify the date, type of accident, and *precise location* of all accidents. He could identify all crossover accidents that occurred at the accident site.

Dunlap avoided discussing the rate of accidents during the five-year period before the current accident. But that was the relevant period for determining whether the accident rate increased or decreased *leading up to* the time of this accident. (*Wyckoff v. State of California*, *supra*, 90 Cal.App.4th at p. 61.) He did not state facts to show the number of crossover accidents at the accident site within that five-year period. Because this case involves whether Caltrans should have erected a center median to prevent crossover accidents, the relevant statistical issue is the "crossover" accident rate at the accident site. (*Mirzada v. Department of Transportation*, *supra*, 111 Cal.App.4th at pp. 804, 809.) But that rate cannot be determined where, as here, the plaintiff's expert fails to specify the number of crossover median accidents. (*Ibid*.) Without such statistical evidence, Lin does not show triable issues of fact in a crossover median case. (*Ibid*.)

Dunlap showed that wet highways produce more accidents. That is a commonly known fact, but it does not show why Caltrans should be on notice about a special condition at this accident site. (*Mirzada v. Department of Transportation*, *supra*, 111 Cal.App.4th at p. 808.) Moreover, the mere fact that wet weather makes roads more slippery does not, by itself, support a cause of action against Caltrans. (*Allyson v. Department of Transportation* (1997) 53 Cal.App.4th 1304, 1320.)

Lin made no showing that the rate of accidents increased during the most recent five-year period before this accident.

Sams's statistics show a tiny accident rate of 0.000016 percent for that period. (*Wyckoff v. State of California, supra*, 90 Cal.App.4th at pp. 60-62.) Sams determined that there were four substantially similar median crossover accidents in that five-year period *near the accident site*. But two of those were not at the "vicinity" of this accident site curve–one was four miles east of it and the other was 900 feet east of it. Of the remaining two accidents at this curve, one occurred in November 2015 and the other in January 2018. Consequently, within the five-year period before this accident, there were *actually only two crossover median* accidents *at this accident site* with 25 million cars having passed this area.

It was "incumbent on [Lin] to show this rate was *statistically aberrant*, i.e., unusual or excessive in some respect" (*Compton v. City of Santee, supra*, 12 Cal.App.4th at p. 599, italics added) and "sufficiently beyond ordinary statistical probabilities to alert [Caltrans] of the dangerous nature" of the roadway. (*Id.* at p. 600.) In *Wyckoff*, the court held raw data such as a plaintiff's showing of "nine crossover accidents . . . in the two year period prior to plaintiffs' accident" is not sufficient to show a loss of immunity without evidence of an "aberrant" increase in the rate of accidents. (*Wyckoff v. State of California, supra*, 90 Cal.App.4th at p. 61, fn. 3.)

As the trial court correctly noted, Lin presented no "surveys or studies showing a statistically aberrant increase in wet weather accidents or cross centerline collisions at the subject location" leading up to the time of the accident. (*Wyckoff v. State of California, supra*, 90 Cal.App.4th at p. 61, fn. 3; see also *Laabs v. City of Victorville, supra*, 163 Cal.App.4th at p. 1269.) Sams concluded there was no aberrant rate of increase in crossover

median accidents at the accident site. His conclusion was supported by specific foundational facts including the dates, locations, and descriptions of all crossover accidents. Because Dunlap did not provide such foundational facts, he was not in a position to render an opinion on this issue. Because he elected not to address Sams's foundational facts, those facts stand uncontradicted. Lin's presentation of general accident statistics "does not establish that the accident rate *of this particular site* has increased." (*Mirzada v. Department of Transportation, supra*, 111 Cal.App.4th at p. 808, italics added.)

The trial court also correctly noted that Lin presented "no evidence demonstrating a significant change in the roadway conditions during relevant time periods." (*Grenier v. City of Irwindale, supra*, 57 Cal.App.4th at p. 945.) Dunlap did not provide admissible evidence showing dangerous or changed roadway surface conditions for 1962, 2010, 2011, and for 2015 to 2020. "Without evidence of some change, a design which was reasonably approvable at its inception remains reasonably approvable today." (*Compton v. City of Santee, supra*, 12 Cal.App.4th at p. 598.) Even where there is a showing of "a significant accident history," that "is *insufficient to establish loss of design immunity* where plaintiffs have *failed to show a change in physical conditions* from those existing at the time the design plan was approved." (*Wyckoff v. State of California, supra*, 90 Cal.App.4th at p. 61, fn. 3, italics added.)

*Lin's Reliance on Dunlap's New Theories*

Lin's reliance on Dunlap's declaration is largely misplaced. Dunlap relied on new issues that were not raised as negligence grounds in the first amended complaint, such as Caltrans's alleged failure to resurface the highway causing a loss of road

friction that made the highway slippery. But, as the trial court correctly ruled, those new issues cannot be used to oppose summary judgment because they were not raised in the first amended complaint. (*Laabs v. City of Victorville*, *supra*, 163 Cal.App.4th at p. 1253.) Moreover, Caltrans also correctly notes that even had Lin pled them in the first amended complaint, Dunlap did not provide the necessary foundational facts to be able to opine on them.

Dunlap said the surface of the highway "was not providing drivers with sufficient traction to maintain control." But "conclusory" opinions are not sufficient without facts and scientific evidence to support them. (*Santa Ynez Band of Chumash Mission Indians v. Lexington Insurance Co.* (2023) 90 Cal.App.5th 1064, 1073, review granted July 12, 2023, S280353; *People v. Wright* (2016) 4 Cal.App.5th 537, 545-546; *Mirzada v. Department of Transportation*, *supra*, 111 Cal.App.4th at p. 808.)

Caltrans properly objects to Dunlap's ability to opine on the physical condition and friction characteristics of the highway. It correctly notes Dunlap did not: 1) state "what standard coefficient of friction" applies (*Mihailovich v. Laatsch* (7th Cir. 2004) 359 F.3d 892, 910); 2) state what the coefficient of friction was at the time of the accident; 3) cite relevant scientific studies; 4) state that he took "any physical" evidence; and 5) *personally inspect the relevant portion of the highway*. Because Dunlap did not personally examine the road, he was not in a position to make a comparative analysis to determine whether the accident site was slippery, or any more slippery than any other portion of highway 154. (*People v. Wright*, *supra*, 4 Cal.App.5th at pp. 545-546; *Francis v. Sauve* (1963) 222 Cal.App.2d 102, 114; *Pollock v. State Highway & Transportation Dept.* (N.M.Ct.App. 1999) 984 P.2d

20.

768, 774 [expert "obtained personal knowledge of the accident site by visiting it"].)

Moreover, Dunlap's conclusion about the loss of friction was based on speculation. He did not conduct the tests necessary to determine this issue, such as: surface slippery or highway "friction test[ing]" (*Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 153; *Zavinski v. Ohio Department of Transportation* (OhioCt.App. 2019) 135 N.E.3d 1170, 1180); tests "to determine the drag factor or 'coefficient of friction' of the highway surface" (*LeMieux v. Bishop* (1973) 209 N.W.2d 379, 375); "ball-bank" tests (*Farlow v. Roddy* (1986) 493 So.2d 592, 599); asphalt touch tests; highway "texture" tests (*Barrett v. State* (N.Y.App.Div. 1965) 256 N.Y.S.2d 261, 263). He did not make highway surface measurements. He consequently had no foundation to render an opinion. (*Ibid.*)

By contrast, Sams, a qualified state highway engineer expert, visited the site, made a proper inspection, "measured the roadway features," and determined the "pavement and delineation were in good condition."

Dunlap said that "it is necessary to periodically rehabilitate the road surface" by replacing the pavement. He incorrectly assumed that "Caltrans did nothing to improve the surface friction" of this area of the highway. But it is undisputed that in 2010 Caltrans approved a project that "overlayed" the road surface with "Hot Mix" asphalt to "increase the pavement life and improve friction characteristics of the pavement surface." Dunlap did not show that project did not meet the resurfacing highway design standards. Nor did he present evidence or relevant studies to show what was the expected life of that resurfacing or at what date new resurfacing would be required. (*People v.*

*Wright, supra*, 4 Cal.App.5th at pp. 545-546.)  His opinion about the need for resurfacing was not supported by required foundational facts showing "the condition of the *texture of the road* at or near the date of the accident."  (*Barrett v. State, supra*, 256 N.Y.S.2d at p. 263, italics added.)

Dunlap noted that Caltrans's traffic incident reports recommended high friction surface treatment to deal with a " 'pattern of wet weather collisions.' "  But, as Caltrans notes, the area selected for this treatment *was not* the curve that is at the center of this case.  It consequently did not involve the *relevant* area for this action.  (*Mirzada v. Department of Transportation, supra*, 111 Cal.App.4th at p. 808.)

Moreover, as part of its duty, Caltrans periodically makes recommendations to improve its highways.  Such recommendations for improvements are not admissions that the road is unsafe or in bad shape.  Nor are they admissions that "the conditions had changed in a way that ended the design immunity."  (*Mirzada v. Department of Transportation, supra*, 111 Cal.App.4th at p. 808.)

Lin raises other issues that cannot be considered because they were not raised in her first amended complaint.  (*Laabs v. City of Victorville, supra*, 163 Cal.App.4th at p. 1253.)  We have reviewed Lin's remaining contentions and we conclude she has not shown grounds for reversal.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


BALTODANO, J.

23.

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Cotchett, Pitre & McCarthy, Robert B. Hutchinson, Kelly W. Weil and Hannah K. Brown for Plaintiffs and Appellants.

California Department of Transportation – Legal Division, Erin E. Holbrook, Chief Counsel, G. Michael Harrington, Deputy Chief Counsel, Ardine Zazzeron, Assistant Chief Counsel, and Harinet Sahle for Defendant and Respondent.